# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

SYDNI ALEXANDER MATTHEWS,

       Defendant-Appellant.

UNPUBLISHED
March 19, 2015

No. 319877
Oakland Circuit Court
LC No. 2013-246711-FC

Before: BOONSTRA, P.J., and SAWYER and O'CONNELL, JJ.

PER CURIAM.

Defendant, Sydni Alexander Matthews, appeals as of right his conviction of armed robbery, MCL 750.529, following a jury trial. The trial court sentenced him to serve 20 to 60 years' imprisonment. We affirm.

## I. FACTS

According to Danielle Linihan, on June 13, 2013, she was working her first shift at a Subway store in Pontiac. At around 9:30 p.m., a man called the store and asked if a manager was available. Linihan responded that she was the only person in the store and it was her first time closing the store. The man said he was Sydni and asked when he next worked.

At 9:55 p.m., a man came into the store, pointed a gun at Linihan, and told her to give him "all the money." The man wore a bandana over the bottom of his face, but she could see his eyes, nose, and sideburns. Linihan tried to use a key to open the register, but the man asked for her employee number, which he then entered into the register to open it. The man also asked for the safety deposit box where the store kept additional small bills. Linihan estimated that the man stole about $220, some of which was wrapped in rubber bands.

Linihan called the police and Bradley Brock, the store owner. Brock testified that he and Dawn Graham, a district manager, came to the store. According to Brock, he immediately recognized Matthews in the surveillance video because of his walk, stature, and profile. Graham testified that Matthews walked with a "strut" and always entered the store in the same way. Brock also testified that three days before the robbery, he had reconnected the store's surveillance equipment after he discovered that someone had tampered with it. Linihan testified that, after she watched the surveillance video, she realized that the man on the video had the same voice as the man who had called the store.

-1-

Officers went to Matthews's residence and arrested him. Officers found a BB gun and cash wrapped in a rubber band. The cash included ninety-five $1 bills, four $20 bills, and two $5 bills, some of which were rubber-banded. Linihan testified that officers escorted Linihan to Matthews's home. Linihan identified Matthews immediately and was "one hundred percent certain" that Matthews had robbed the store.

## II. IDENTIFICATION

Matthews contends that the trial court erred when it denied his motion for a directed verdict because the prosecutor did not prove his identity as the robber. In his pro-se supplemental brief filed pursuant to Michigan Supreme Court Order 2004-6, Standard 4, Matthews also contends that the prosecutor did not present sufficient evidence of his identity to support his conviction. We disagree with both arguments.

A claim that the evidence was insufficient to convict a defendant invokes that defendant's constitutional right to due process of law. *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992). Thus, this Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). We review the evidence in a light most favorable to the prosecutor to determine whether a rational trier of fact could find that the prosecutor proved the crime's elements beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). We apply the same standards to our review of the trial court's decision on a motion for a directed verdict. See *People v Aldrich*, 246 Mich App 101, 122; 631 NW2d 67 (2001).

Matthews contends that nothing in the video evidence supported Brock and Graham's statements that Matthews had a distinctive walk, and that the remaining evidence did not prove his identity. "[I]dentity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). This Court will not interfere with the trier of fact's role to determine the weight of the evidence or the credibility of the witnesses. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

In this case, the jury was able to view the surveillance video and assess the credibility of the witnesses' statements. Further, there was other evidence supporting Matthews's identity as the robber, including the robber's knowledge of the store and its processes, Linihan's identification, the amount and type of cash stolen from the store and found in Matthews's possession, and Matthews's spontaneous statement to arresting officers that "[t]his must have been related to my work[.]" We decline to substitute our credibility assessment for that of the jury and conclude that a rational trier of fact could find that the prosecutor proved Matthews's identity beyond a reasonable doubt.

In his pro-se supplemental brief, Matthews also argues that the circumstantial evidence in this case was too speculative to support his conviction. Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime. *Id*. at 622. Matthews's belief that the prosecutor must prove a case involving circumstantial evidence to an "impelling certainty" rests on a misstatement of the law. See *People v Ericksen*, 288 Mich App 192, 196; 793 NW2d 120 (2010). The burden to prove a case is "beyond a reasonable doubt," regardless of whether the case rests on direct or circumstantial evidence. *Id*.

For the reasons previously stated, a rational jury could find from the evidence in this case that Matthews was the robber.

## III. PROSECUTORIAL MISCONDUCT

In his pro-se supplemental brief, Matthews contends that the prosecutor committed misconduct by making several statements in closing that expressed a personal belief of Matthews's guilt. We disagree.

This Court will not reverse a conviction on the basis of prosecutorial misconduct unless the defendant "timely and specifically" challenges the alleged misconduct before the trial court, or unless a failure to review the issue would result in the miscarriage of justice. *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008). We review unpreserved claims of prosecutorial misconduct for plain error affecting a defendant's substantial rights. *People v Brown*, 279 Mich App 116, 135; 755 NW2d 664 (2008).

A prosecutor can deny a defendant's right to a fair trial by making improper remarks that infringe on a defendant's constitutional rights or by making remarks that "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v DeChristoforo*, 416 US 637, 643; 94 S Ct 1868; 40 L Ed 2d 431 (1974). See *People v Bahoda*, 448 Mich 261, 266-267; 531 NW2d 659 (1995). We must evaluate instances of prosecutorial misconduct on a case-by-case basis, reviewing the prosecutor's comments in context, and in light of the defendant's arguments and the evidence presented in the case. *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007). A prosecutor may not convey that he or she has special knowledge of facts. *Bahoda*, 448 Mich at 277. But a prosecutor may argue all the facts in evidence and all reasonable inferences arising from them, as they relate to the prosecutor's theory of the case. *Id*. at 282.

In this case, the prosecutor summarized the evidence and stated that there was "[n]o question the defendant committed an armed robbery that day." The prosecutor also stated, "For these reasons, I ask that you find the defendant guilty of armed robbery because he is," and urged the jury to "[f]ind him guilty. Guilty of armed robbery. Hold him accountable for his actions."

After reviewing the prosecutor's statements in context, we conclude that they do not constitute plain error. The prosecutor's comments did not convey a special knowledge of the facts. Rather, they were part of the larger argument regarding why the jury should find Matthews guilty on the basis of the testimony and other evidence.

## IV. SENTENCING

Matthews contends that the trial court improperly assessed offense variables (OVs) 10 and 15, which concern the offender's predatory conduct and sequence of criminal acts, respectively. We disagree.

This Court reviews the sentencing court's scoring of a sentencing guidelines variable for clear error. *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008). A finding is clearly erroneous if, after reviewing the entire record, we are definitely and firmly convinced that the trial court made a mistake. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). A

preponderance of the evidence must support the trial court's determinations. *Osantowski*, 481 Mich at 111.

Our Legislature has enacted sentencing guidelines. MCL 769.34. The sentencing guidelines are consistent with principles of proportionality as enshrined in the Michigan and United States constitutions. *People v Babcock*, 469 Mich 247, 262-263; 666 NW2d 231 (2003).

First, Matthews contends that the trial court improperly scored OV 10 because he did not engage in predatory conduct. The trial court must assess 15 points under OV 10 if "[p]redatory conduct was involved." MCL 777.40(1)(a). The statute defines predatory conduct as "preoffense conduct directed at a victim . . . for the primary purpose of victimization. MCL 777.40(3)(a). Whether a defendant engaged in predatory conduct depends on three inquiries:

> (1) Did the offender engage in conduct before the commission of the offense?
>
> (2) Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation?
>
> (3) Was victimization the offender's primary purpose for engaging in the preoffense conduct?
>
> If the court can answer all these questions affirmatively, then it may properly assess 15 points for OV 10 because the offender engaged in predatory conduct under MCL 777.40. [*People v Cannon*, 481 Mich 152, 161-162; 749 NW2d 257 (2008).]

Further, the conduct must be "'predatory' in nature, e.g., lying in wait and stalking, as opposed to purely opportunistic criminal conduct" or "nothing more than run-of-the-mill planning[.]" *People v Huston*, 489 Mich 451, 462; 802 NW2d 261 (2011) (quotation marks and citation omitted). "The timing of an offense, including watching the victim and waiting until the victim is alone before victimizing her, may be evidence of predatory conduct." *People v Kosik*, 303 Mich App 146, 160; 841 NW2d 906 (2013).

In this case, Matthews called the store about twenty minutes before the robbery. He ascertained that Linihan was alone and that it was her first day on the job. This conduct occurred before the robbery and was directed Linihan, a victim who was susceptible because of the timing of the offense, for the primary purpose of victimizing her. We conclude that the trial court did not clearly err when it assessed 15 points under OV 10.

The trial court properly scores OV 13 if the defendant engaged in a "continuing pattern of criminal behavior." MCL 777.43. MCL 777.43(1) provides that the trial court must

[s]core offense variable 13 by determining which of the following apply . . . :

* * *

(c) The offense was part of a pattern of felonious criminal activity involving a combination of 3 or more crimes against a person ............... 25 points

When assessing prior record variables (PRVs), the trial court may not use convictions obtained without counsel to enhance the offender's sentence. *People v Alexander*, 207 Mich App 227, 230; 523 NW2d 653 (1994). But the trial court must also consider offenses that did *not* result in a conviction when assessing OV 13. MCL 777.43(2)(a).

Matthews contends that the trial court could not rely on his out-of-state juvenile adjudication in 2008 for assault to support assessing him 25 points under OV 13 because it was not clear whether Matthews had counsel during that proceeding. Matthews fails to distinguish between PRVs, which consider prior convictions, and OVs, which consider offender and offense characteristics. In this case, the trial court did not assess Matthews under the PRVs for the adjudication that resulted from his 2008 assault. Rather, it assessed him for the behavior that led to that adjudication. Whether Matthews was subsequently convicted, with or without counsel, is irrelevant. We conclude that the trial court did not clearly err when it counted this incident as part of a pattern of felonious behavior.

We affirm.

/s/ Mark T. Boonstra
/s/ David H. Sawyer
/s/ Peter D. O'Connell