## PEOPLE v KOSIK

Docket No. 312518. Submitted November 6, 2013, at Lansing. Decided
November 12, 2013, at 9:05 a.m. Leave to appeal sought.

Dustin J. Kosik was convicted by a jury in the Bay Circuit Court of
unlawful imprisonment, MCL 750.349b, and assault and battery,
MCL 750.81(1), after he forced a shoe store clerk into a back room
of the shoe store. After forcing her into the back room, defendant
tried to convince the victim that he had been joking, asked her not
to tell anyone about the incident, and then left the store. Defen-
dant moved for judgment notwithstanding the verdict, a new trial,
or resentencing. The court, Harry P. Gill, J., denied the motion.
Defendant appealed.

The Court of Appeals *held*:

1. A person commits the crime of unlawful imprisonment if he
or she knowingly restrains another person under circumstances in
which the restrained person was secretly confined by either
keeping the confinement of the restrained person a secret, or
keeping the location of the restrained person a secret. Secret
confinement means the victim is deprived of the assistance of
others by virtue of the victim's inability to communicate his or her
predicament to others. In this case, sufficient evidence was pre-
sented that defendant confined the victim and that the confine-
ment was secret given that defendant assaulted the victim when
she was alone in the store; took the victim into an enclosed area
against her will; the enclosed area would not have been visible to
anyone passing by; defendant stood in front of the door to the
enclosed area, preventing the victim from escaping; and defendant
took a phone away from the victim so that she could not call for
help. Whether and when defendant chose to release the victim is
immaterial. The determination whether a person has been secretly
confined generally is not dependent on the duration of the con-
finement.

2. Jury instructions must include all the elements of the
charged offense, and must not exclude material issues, defenses, or
theories if the evidence supports them. In this case, the trial court
read CJI2d 20.26, which states that to prove the charge, the
prosecution does not have to show that the complainant resisted

the defendant. The trial court did not abuse its discretion by giving the instruction, which clarified that the victim did not need to resist in order for defendant to be convicted. This was appropriate in light of language used by defense counsel, which arguably suggested that the victim had consented to go to the backroom with defendant. The instruction did not diminish the prosecution's burden of proof.

3. Offense variable (OV) 8 concerns victim asportation or captivity. Under MCL 777.38(2)(b), zero points are to be assessed for OV 8 when the sentencing offense is kidnapping. When the sentencing guidelines were enacted, the kidnapping statute, MCL 750.349, proscribed several forms of conduct, including forcibly or secretly confining or imprisoning any other person within this state against his or her will. The Legislature subsequently amended the kidnapping statute, MCL 750.349, and added the unlawful imprisonment statute, MCL 750.349b, thereby differentiating unlawful imprisonment from kidnapping. The Legislature is presumed to have been aware of the language in the sentencing guidelines when it amended the kidnapping statute and differentiated unlawful imprisonment from kidnapping. The Legislature also is presumed to have considered the consequence of failing to include unlawful imprisonment in MCL 777.38(2)(b), and thus to have intended that MCL 777.38(2)(b) direct the assessment of zero points for OV 8 only when the sentencing offense is kidnapping. Accordingly, the trial court did not err by assessing defendant 15 points for OV 8.

4. OV 10 concerns the exploitation of a vulnerable victim. Fifteen points must be assessed for OV 10 when predatory conduct was involved. The timing of an offense, including watching the victim and waiting until the victim is alone before victimizing him or her, may be evidence of predatory conduct. The trial court did not err by assessing defendant 15 points under OV 10 in light of the evidence that defendant investigated the store and waited until the victim was alone before assaulting her. It is of no consequence that the victim did not suffer from an inherent vulnerability because the trial court determined that the circumstances of the offense rendered the victim vulnerable.

Affirmed.

SENTENCES — SENTENCING GUIDELINES — OFFENSE VARIABLE 8 — VICTIM ASPORTATION OR CAPTIVITY — UNLAWFUL IMPRISONMENT.

Under MCL 777.38(2)(b), zero points are to be assessed for offense variable 8 when the sentencing offense is kidnapping; unlawful

imprisonment is now a separate offense from kidnapping, and MCL 777.38(2)(b) does not apply to unlawful imprisonment.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Kurt C. Asbury*, Prosecuting Attorney, and *Sylvia L. Linton*, Assistant Prosecuting Attorney, for the people.

*Peter Ellenson* for defendant.

Before: MURRAY, P.J., and DONOFRIO and BOONSTRA, JJ.

BOONSTRA, J. Defendant appeals by right his convictions for unlawful imprisonment, MCL 750.349b, and assault and battery, MCL 750.81(1). Defendant was sentenced as a third-offense habitual offender, MCL 769.11, to a term of 106 months to 30 years' imprisonment for unlawful imprisonment, and to a concurrent term of 93 days' imprisonment for assault and battery. We affirm.

### I. PERTINENT FACTS AND PROCEDURAL HISTORY

On February 2, 2012, defendant entered the shoe store where the victim worked. The victim was present with another coworker. Defendant was ostensibly looking for dress shoes, but the store did not have defendant's size in the style of shoe he wanted. The victim "print[ed] off a little slip that said all the different stores that had that select shoe on it, and then [she] handed that to" defendant. The victim's coworker was preparing to take her break at the time and had her jacket and purse with her. Defendant left the store. Shortly thereafter, the coworker left to take her break.

Defendant returned to the store after "[m]aybe five minutes." The victim testified that defendant "asked [her] if [she] could call over to the store that the shoes

were located at. And he asked [her] to go over to the actual shoes to double-check to make sure that they were the right shoes that he was looking for." The victim went over to the shoes, knelt down, pulled out the box of the particular shoe defendant wanted, and called another store on a cordless phone to verify that it had the shoe in stock. The victim testified that once she stood up, defendant "lunged towards [her] and grabbed [her], and turned [her] around . . . ." "[H]e was standing a little bit behind me," she testified, "and he had to come at me and grab me, and put his arm all the way around me, so it'd be all the way around my far right side, and my left arm would be up against him."

The victim further testified that defendant took the phone from her and "told [her] to keep walking" as he led her into "the conference room." The victim testified that as defendant led her into the conference room, he asked whether there were any security cameras in the store. She told him that she did not know. The victim testified that defendant closed the door after he led her into the room. She further testified that a person in the main area of the store would not be able to see into the conference room if the door was shut, and that the conference room had no windows. When asked whether there were any doors leading out of the conference room, the victim responded, "Not into the conference room. Once you go into the very back room, there's an emergency exit there." The victim testified that defendant was "[p]robably about an arm's distance away" while they were in the conference room.

The victim testified that once they were in the conference room, defendant attempted to convince her that he was "joking." He asked the victim not to tell anyone about the incident and said he was "just kid-

ding." Defendant then left the store and the victim called 911. Defendant was apprehended by police shortly thereafter.

During deliberations the jury sent out a note asking, "Does a 'secret location' remain secret if there is an exit for a victim to leave (behind her)." The trial court reinstructed the jury on the elements of unlawful imprisonment. The Court then stated, "That is all I can tell you. It is for you to decide as to both of those questions."

Following sentencing, defendant moved for a judgment of acquittal, a new trial, or resentencing, raising most of the points later presented in this appeal. The trial court concluded that none of the arguments merited relief and denied the motion. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the evidence presented at trial was insufficient to support his conviction for unlawful imprisonment. We disagree.

We review de novo a defendant's challenge to the sufficiency of the evidence. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). In reviewing the sufficiency of the evidence, this Court must view the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). However, we do not interfere with the factfinder's role of determining the weight of the evidence and the credibility of witnesses. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). It is for the trier of fact, rather than this Court, to determine what inferences can be fairly drawn from the evidence and to determine the weight to be

afforded to the inferences. *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). The prosecution need not negate every reasonable theory of innocence, but must only prove its own theory beyond a reasonable doubt "in the face of whatever contradictory evidence the defendant may provide." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000) (quotation marks and citation omitted). Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). We resolve all conflicts in the evidence in favor of the prosecution. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

MCL 750.349b provides in pertinent part:

(1) A person commits the crime of unlawful imprisonment if he or she knowingly restrains another person under any of the following circumstances:

* * *

(b) The restrained person was secretly confined.

* * *

(3) As used in this section:

(a) "Restrain" means to forcibly restrict a person's movements or to forcibly confine the person so as to interfere with that person's liberty without that person's consent or without lawful authority. The restraint does not have to exist for any particular length of time and may be related or incidental to the commission of other criminal acts.

(b) "Secretly confined" means either of the following:

(*i*) To keep the confinement of the restrained person a secret.

(*ii*) To keep the location of the restrained person a secret.

Defendant first argues that the evidence did not show that the victim was confined. Defendant further argues that any confinement was not "secret." The statute does not define the word "confine." Our Supreme Court has stated that "secret confinement" means the "deprivation of the assistance of others by virtue of the victim's inability to communicate his predicament." *People v Jaffray*, 445 Mich 287, 309; 519 NW2d 108 (1994). In *People v Railer*, 288 Mich App 213, 215-216, 218; 792 NW2d 776 (2010), this Court held that the prosecution had presented sufficient evidence of unlawful imprisonment when the evidence indicated that the victim was forced into her car, driven to various locations, beaten severely, had her car keys and phone taken away from her, and was told not to disclose her location when forced to answer a call from her sister. This Court determined that sufficient evidence of confinement had been presented even though the car had been parked twice, because the victim "dared not leave while in defendant's presence . . . ." *Id.* at 218.

In this case, there was sufficient evidence presented for a rational jury to find both that defendant confined the victim and that the confinement was secret. The victim was taken against her will into a conference room. She was held there in an enclosed area that was not visible to anyone who may have been passing by or in the store. Defendant was standing in front of the door to the conference room. If the victim had tried to escape, defendant was within arm's reach of her and could have prevented her from doing so. The victim testified that she was frightened by defendant. Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence that defendant restricted the victim's movement within the bounds of the conference room.

Defendant also argues that the victim was not secretly confined because the incident was too brief in duration. This argument miscomprehends the meaning of confinement, as well as what is required for a confinement to be secret. The determination whether a person has been secretly confined is generally not dependent on the duration of the confinement. See *Jaffray*, 445 Mich at 308. Further, the record shows that the victim was moved to a location outside the view of others, and was confined and restricted within the bounds of the conference room for a significant period. Whether and when defendant chose to release the victim is immaterial to whether there was secret confinement. Defendant's argument that he did not "keep" the victim's confinement or the location of her confinement secret because of the brief duration of the confinement fails for the same reason.

Defendant next argues that the circumstances of the confinement were not sufficiently egregious to satisfy the elements of unlawful imprisonment. Defendant contends that the victim could have been discovered if an employee or customer had come in and walked into the conference room and that the victim could have escaped from the conference room. Defendant argues further that he did not bind the victim, gag her, lock the doors, or threaten her.

Nothing in the statute requires a certain level of difficulty of discovery or escape. "Secret confinement" means the "deprivation of the assistance of others by virtue of the victim's inability to communicate his predicament." *Id.* at 309. Viewing the evidence in the light most favorable to the prosecution, the victim was unable to communicate her predicament. Defendant waited until the victim's coworker left on her break to return to the store. There were no customers in the

store when defendant came back. Defendant forcefully grabbed the victim, led her into a conference room, and closed the door behind him. The room had no windows. The victim was in an enclosed area not visible to anyone who may have walked by or come into the store. Defendant was standing in front of the door to the conference room. Defendant took the phone away from the victim so that she could not call for help. Given these circumstances, a rational jury could find that the victim was deprived of the assistance of others by virtue of her inability to communicate her predicament. We conclude that the evidence was sufficient to support defendant's conviction.

### III. GREAT WEIGHT OF THE EVIDENCE

Similarly, we find that the verdict was not against the great weight of the evidence and that the trial court did not abuse its discretion by refusing to grant defendant a new trial. We review a trial court's determination that a verdict was not against the great weight of the evidence for an abuse of discretion. *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008). "A trial court may grant a motion for a new trial based on the great weight of the evidence only if the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Id.* An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

Defendant raises essentially the same arguments with regard to the weight of the evidence as he raised with regard to its sufficiency, which we reject for the same reasons. Additionally, defendant alleges that the jury's note indicates that the jury questioned whether

there was sufficient evidence of secret confinement. However, the jury rendered a guilty verdict. The fact that it may have sought clarification regarding the meaning of "secret location" does not undermine the validity of that verdict.

### IV. JURY INSTRUCTIONS

Next, defendant argues that the trial court erred by instructing the jury that the victim did not have to resist for defendant to be guilty of unlawful imprisonment. A trial court's determination that a certain instruction "is applicable to the facts of a case" is reviewed for an abuse of discretion. *People v Guajardo*, 300 Mich App 26, 34; 832 NW2d 409 (2013). We hold that the trial court did not abuse its discretion in giving the challenged instruction under the facts of this case.

Jury instructions must include all the elements of the charged offense, and must not exclude material issues, defenses, or theories if the evidence supports them. Even if somewhat imperfect, instructions do not create error if they "fairly presented the issues for trial and sufficiently protected the defendant's rights." *People v Canales*, 243 Mich App 571, 574; 624 NW2d 439, 441 (2000). " 'The defendant bears the burden of establishing that the asserted instructional error resulted in a miscarriage of justice.' " *Guajardo*, 300 Mich App at 34 (citation omitted).

The trial court read CJI2d 20.26 to the jury, which is located in the chapter concerning "Sex Crimes." It provides, "To prove this charge, the prosecutor does not have to show that *[name complainant]* resisted the defendant." Defendant objected, arguing that the instruction minimized or eliminated the requirement that the prosecution prove the victim was restrained or confined. The trial court found that the instruction was

"a clarifying instruction" that did not alter the prosecution's burden, but simply indicated that the victim had no duty to resist defendant.

Defendant's argument that this instruction diminished the prosecution's burden of proof is without merit. The instruction merely informed the jury that the victim did not need to resist in order for defendant to be convicted of unlawful imprisonment. The instruction did not state or imply that defendant could be convicted even if the prosecution failed to prove an element of the crime beyond a reasonable doubt. Indeed, the trial court instructed the jury that it had to find that the prosecution proved each element of unlawful imprisonment beyond a reasonable doubt. "It is well established that jurors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).

Further, defense counsel's use, in his opening and closing arguments, of the words "led," "escort[ed]," and "took" in reference to defendant's conduct toward the victim arguably implied that the victim consented to going into the conference room with defendant. It was not unreasonable for the trial court to interpret this phrasing as suggesting a lack of resistance and, therefore, conclude that it was necessary to instruct the jury that the victim did not have to resist in order for defendant to be convicted of unlawful imprisonment. The instruction clarified an issue that the trial court felt the jurors might have questioned, and the court did not abuse its discretion by giving the instruction because doing so fell within the range of principled outcomes.

Finally, it is irrelevant that the instruction was adapted from one found within the "Sex Crimes" chapter of the second edition of the Michigan Criminal Jury

Instructions. The instruction did not refer to sex crimes and the trial court did not in any way suggest that this was a sex crime.

### V. OFFENSE VARIABLES

Defendant argues that the trial court erred in the scoring of offense variables (OVs) 8 and 10. We disagree.

> Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. [*People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (citations omitted).]

#### A. OV 8

Defendant first argues that OV 8 (victim asportation or captivity) was incorrectly scored at 15 points. MCL 777.38(2)(b) states that zero points should be assessed for OV 8 "if the sentencing offense is kidnapping." The statute does not provide a statutory reference for "kidnapping." When the sentencing guidelines were enacted, the kidnapping statute, MCL 750.349, read, in part, as follows:

> Any person who wilfully, maliciously and without lawful authority shall forcibly or secretly confine or imprison any other person within this state against his will, or shall forcibly carry or send such person out of this state, or shall forcibly seize or confine, or shall inveigle or kidnap any other person with intent to extort money or other valuable thing thereby or with intent either to cause such person to be secretly confined or imprisoned in this state against his will, or in any way held to service against his will, shall be guilty of a felony, punishable by imprisonment in the state

prison for life or for any term of years. [MCL 750.349, as added by 1931 PA 328, § 349.[1]]

In *People v Wesley*, 421 Mich 375, 383; 365 NW2d 692 (1984), our Supreme Court held that the statute proscribed several forms of conduct, including "forcibly or secretly confin[ing] or imprison[ing] any other person within this state against his will[.]"

In 2006, the Legislature amended MCL 750.349 and added MCL 750.349b, differentiating unlawful imprisonment from kidnapping. 2006 PA 159; 2006 PA 160. However, the Legislature did not amend MCL 777.38. Thus, the question is whether "kidnapping" as used in MCL 777.38(2)(b) refers to kidnapping as defined in the current MCL 750.349 or in the broader sense of the former statute, which included unlawful imprisonment.

The primary objective in interpreting a statute is to "give effect to the Legislature's intent." *People v Peltola*, 489 Mich 174, 181; 803 NW2d 140 (2011). "This Court may not speculate regarding the probable intent of the Legislature beyond the language expressed in the statute." *People v Hock Shop, Inc*, 261 Mich App 521, 528; 681 NW2d 669 (2004). Moreover, "[t]he Legislature is presumed to be familiar with the rules of statutory construction, and when it is promulgating new laws it is presumed to be aware of the consequences of its use or omission of statutory language." *Id*. Further, "[i]t is a well-known principle that the Legislature is presumed to be aware of, and thus to have considered the effect on, all existing statutes when enacting new laws." *People v Feezel*, 486 Mich 184, 211; 783 NW2d 67 (2010) (quotation marks and citation omitted).

Simply put, the plain language of MCL 777.38 directs the assessment of zero points for OV 8 only when the

---

[1] MCL 750.349 was subsequently amended by 2006 PA 159.

sentencing offense is "kidnapping." The Legislature made unlawful imprisonment a distinct crime, but chose not to amend MCL 777.38(2)(b) to direct the assessment of zero points for OV 8 when the sentencing offense is unlawful imprisonment—even though it amended MCL 777.16q to include unlawful imprisonment in the list of crimes to which the sentencing guidelines apply. The Legislature is presumed to have been aware of the language in MCL 777.38 when it revised MCL 750.349 and added MCL 750.349b, and it is presumed to have considered the consequences of failing to include unlawful imprisonment in MCL 777.38(2)(b). In light of these presumptions, we conclude that the Legislature intended that MCL 777.38(2)(b) direct the assessment of zero points for OV 8 only when the sentencing offense is kidnapping. Accordingly, the trial court in this case did not err by assessing 15 points under OV 8.

### B. OV 10

Lastly, defendant argues that the trial court erroneously assessed 15 points under OV 10 (exploitation of vulnerable victim) because it incorrectly determined that defendant's preoffense conduct was predatory. MCL 777.40(1)(a) provides that 15 points must be assessed for OV 10 when "[p]redatory conduct was involved." "Predatory conduct" is defined in the statute as "preoffense conduct directed at a victim for the primary purpose of victimization." MCL 777.40(3)(a). " 'Victimize' is defined as 'to make a victim of.' " *People v Cannon*, 481 Mich 152, 161; 749 NW2d 257 (2008) (citation omitted). " '[V]ictim' is defined as a person who suffers from a destructive or injurious action . . . ." *People v Huston*, 489 Mich 451, 463; 802 NW2d 261 (2011) (quotation marks and citation omitted). "There-

fore, 'predatory conduct' under the statute is behavior that is predatory in nature, precedes the offense, [and is] directed at a person for the primary purpose of causing that person to suffer from an injurious action . . . ." *Id.* (quotation marks and citation omitted; alteration in original). However, predatory conduct does not encompass "*any* preoffense conduct, but rather only those forms of preoffense conduct that are commonly understood as being predatory in nature . . . as opposed to purely opportunistic criminal conduct or preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection." *Id.* at 462 (quotation marks and citation omitted).

In this case, the trial court determined that defendant engaged in predatory conduct by investigating the store and waiting until the victim was alone to strike. We agree. The timing of an offense, including watching the victim and waiting until the victim is alone before victimizing him or her, may be evidence of predatory conduct. *People v Witherspoon*, 257 Mich App 329, 336; 670 NW2d 434 (2003).

Defendant further argues that the victim was not vulnerable, because she was "a healthy adult, sober, alert and working in a fully lit store, that was open to the public, during the afternoon." This contention was rejected by our Supreme Court in *Huston*. "Vulnerability" is defined in MCL 777.40(3)(c) as "the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." In *Huston*, the Court held that "[t]he statute does not mandate that this 'susceptibility' be *inherent* in the victim. Rather, the statutory language allows for susceptibility arising from external circumstances as well." *Huston*, 489 Mich at 466. In this case, the trial court found that the

circumstances of the offense rendered the victim vulnerable. This is sufficient; the trial court did not need to find that the victim possessed some inherent vulnerability.

We find no error in the trial court's scoring of the challenged offense variables.

Affirmed.

MURRAY, P.J., and DONOFRIO, J., concurred with BOONSTRA, J.