# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

EVAN MICHAEL MORICH,

       Defendant-Appellant.

UNPUBLISHED
October 12, 2017

No. 332970
Monroe Circuit Court
LC No. 15-242308-FC

Before: GLEICHER, P.J., and FORT HOOD and SWARTZLE, JJ.

PER CURIAM.

A jury convicted defendant of armed robbery, MCL 750.529, unlawful imprisonment, MCL 750.349b, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, for the attack and robbery of Thomas Melcer. Defendant challenges the sufficiency of the evidence supporting his felon in possession and felony-firearm convictions and the scoring of various offense variables at sentencing. We discern no error and affirm.

## I. FACTS

Defendant met Melcer in the winter of 2015 while both were utilizing services at Monroe Community Mental Health. Defendant introduced Melcer to his girlfriend, Honi Werner, and Melcer and Werner also became friends. Melcer has a seizure disorder and impairments requiring him to use a cane. Due to these conditions, Melcer is unable to drive. On the afternoon of August 6, 2015, Melcer asked Werner to drive him to a local pharmacy to refill his prescriptions. Melcer testified that afterward, Werner invited him over for dinner. Upon arriving at Werner's home, defendant appeared and asked Werner to drive him to Detroit to buy some heroin. Defendant and Werner left, leaving Melcer alone at Werner's house. Werner described, however, that Melcer had prearranged a visit to Werner's house after the pharmacy so that he could sell his prescription medications to defendant.

Werner testified that she took defendant to a house near Detroit to purchase drugs. During this trip, defendant told her that he intended to rob Melcer upon their return. Defendant took from the Detroit house a ski mask, dark blue work pants, black work boots, "and what [Werner] believe[d] . . . was a shotgun" encased in cardboard. The pair stopped at a gas station where defendant changed his pants and shoes and put on a hoodie and ski mask. Defendant

-1-

ordered Werner to go for a drive before returning home. Defendant took the shotgun and walked the rest of the way.

Melcer described that at approximately 8:30 p.m., a man wearing a mask entered Werner's house through the back door and pulled a shotgun out of a box. Melcer identified defendant as his assailant by his voice and build. Defendant hit Melcer with the barrel of the gun and ordered him to go down to the basement. Defendant held Melcer in the basement for an extended period. He tied Melcer up and pulled his shirt over his head. Once defendant believed Melcer's vision was impaired, he removed his mask. Melcer could see through his shirt, however, and positively identified defendant as his assailant. Defendant poked Melcer with the gun and threatened to kill him and his family if he called the police. Defendant then took Melcer's medications and wallet, which contained $1,150 in cash, credit cards, and a food card. He placed his loot into a bag.

Werner returned home in the midst of Melcer's imprisonment. Defendant pretended to threaten her but then gave her the bag of stolen items. Werner claimed that an unknown man was also in the basement and she handed him the bag. Werner drove this man to his house and when she returned, defendant was gone. Melcer asked Werner to take him to the hospital. She did not want to, but she dropped him off and drove away.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant contends that the prosecution presented insufficient evidence that he possessed a gun, negating a necessary element of his felony-firearm and felon-in-possession convictions. A "firearm" is defined for the purposes of both statutes as "any weapon which will, is designed to, or may be readily converted to expel a projectile by action of an explosive." MCL 750.222(e). We review de novo challenges to the sufficiency of the evidence, viewing the evidence in the light most favorable to the prosecution to determine if a rational jury could find the offense elements proven beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748, amended on other grounds 441 Mich 1201 (1992).

On appeal, defendant notes that "no gun was recovered." Defendant recites Melcer's description of defendant's weapon as a "Remington 870 12 gauge shotgun," but downplays this testimony as Melcer identified the type of weapon based on the sound it made when racked and the feel of the barrel on his neck. Based on this "speculative" testimony, defendant contends that the weapon was "just as likely . . . a gas, air or BB gun incapable of propelling a projectile exceeding .177 caliber" and therefore falling outside the statutory definition of "firearm."

First and foremost, the fact that no gun was found after the crime says little, if anything, about whether a gun was used during the crime. Defendant could have disposed of his weapon anytime and anywhere after the robbery. Indeed, Werner testified that defendant returned to Detroit after the offense; defendant could have disposed of the shotgun along the highway.

Moreover, Melcer's testimony was more than adequate to establish the type of weapon used during the offense. Melcer saw the masked man "pull[] out a shotgun out of the box" immediately upon entering the room. Melcer was in close proximity to the man and "g[o]t a decent look at this gun." Based on his long experience as a hunter, Melcer identified the weapon

as a shotgun. Its barrel was approximately one-half inch in diameter, much too large to propel BBs or air gun pellets. The masked man struck Melcer in the face with gun's barrel and placed the barrel against the back of his head. Melcer was able to feel the sturdy frame of the gun's barrel, which was more consistent with a shotgun than a BB or pellet gun. Ultimately, Melcer was able to identify the brand of weapon based on the sound it made when racked. Again based on his decades of hunting experience, Melcer described that a cheaper shotgun brand makes a rattling noise when racked while a Remington makes a smooth click. Melcer's identification of the manufacturer, model, and gauge number of the weapon are the types of details that could lead a reasonable juror to credit his testimony.

Further, Werner testified that defendant took what she believed was a shotgun from the basement of the Detroit house. When asked why she thought it was a shotgun, she responded, "Because it was a gun and it was long and it was black." "[T]he credibility of witnesses is for the jury" to decide. *People v Lemmon*, 456 Mich 625, 643; 576 NW2d 129 (1998). Werner's testimony supported Melcer's description, strengthening the credibility of both witnesses. And their testimony was more than sufficient to support defendant's convictions.

## II. OFFENSE VARIABLES

Defendant also argues the trial court improperly scored offense variables (OVs) 1, 2, 4, 8, and 10 when calculating his minimum sentencing guidelines range. Defendant preserved his challenges to OVs 8 and 10 by objecting at sentencing. See *People v Sours*, 315 Mich App 346, 348; 890 NW2d 401 (2016). His challenges to OVs 1, 2, and 4 are unpreserved, however. In relation to defendant's preserved challenges, we review de novo the trial court's interpretation and application of the relevant sentencing statutes. *People v Cannon*, 481 Mich 152, 156; 749 NW2d 257 (2008). We review for clear error the trial court's factual determinations, and those factual determinations must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). We review defendant's unpreserved challenges for plain error affecting defendant's substantial rights. *People v Kimble*, 470 Mich 305, 312; 684 NW2d 669 (2004).

The trial court assessed 15 points for OV 1 (aggravated use of a weapon) and 5 points for OV 2 (lethal potential of weapon possessed or used). MCL 777.31(1)(c) provides for a 15-point score for OV 1 if "[a] firearm was pointed at or toward a victim . . . ." MCL 777.32(1)(d) provides that 5 points should be scored for OV 2 if "[t]he offender possessed or used a pistol, rifle, shotgun, or knife or other cutting or stabbing weapon." Defendant argues both OVs were improperly scored for the same reason he challenges the sufficiency of the evidence supporting his convictions—a lack of evidence that he was armed with an actual firearm during the robbery. As discussed above, Melcer's and Werner's testimony was more than sufficient to establish that defendant possessed a shotgun. Moreover, Melcer's testimony that defendant hit him and poked him with the shotgun barrel supports defendant "pointed [the shotgun] at or toward" Melcer. Accordingly, the court did not err in scoring these variables.

The trial court assessed 10 points under OV 4 (degree of psychological injury to a victim). MCL 777.34(1)(a) provides that 10 points should be scored if "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). The victim need not actually seek out treatment to support scoring this variable. MCL 777.34(2).

Defendant contends that Melcer "had already been going to Community Mental Health for quite a long time," and that his continued use of this service was insufficient to establish serious psychological injury related specifically to his robbery. However, the victim impact statement indicates that Melcer is "in constant fear for his life and that his sense of security and trust in others has been shattered since this crime." Although he "continue[d] engaging in mental health services through Community Mental Health" rather than starting new services, Melcer was "presently addressing these new issues in tandem with his previously diagnosed conditions." These observations clearly support scoring 10 points for OV 4.

Defendant argues that the trial court improperly scored 15 points for OV 8 (asportation or captivity). MCL 777.38(1)(a) provides for a 15-point score if "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense." "A victim is asported to a place or situation involving greater danger *when moved away from the presence or observation of others*." *People v Chelmicki*, 305 Mich App 58, 70-71; 850 NW2d 612 (2014) (emphasis added). A basement is certainly a more secluded, isolated area of a home than a first-floor living room. Defendant also forced Melcer to go into a small room in the basement, further increasing his level of isolation from the observation of others. The trial court could reasonably infer from this evidence that defendant moved Melcer to a place where the robbery would be less likely to be discovered by neighbors or others, i.e., a situation of "greater danger." The trial court's score was proper.

Finally, defendant argues that the trial court improperly scored 15 points for OV 10 (exploitation of vulnerable victim). MCL 777.40(1)(a) provides for a 15-point score if "[p]redatory conduct was involved." Predatory conduct is defined as "preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a).

> [P]redatory conduct does not encompass "*any* preoffense conduct, but rather only those forms of preoffense conduct that are commonly understood as being predatory in nature . . . as opposed to purely opportunistic criminal conduct or preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection." [*People v Kosik*, 303 Mich App 146, 160; 841 NW2d 906 (2013), quoting *People v Huston*, 489 Mich 451, 462; 802 NW2d 261 (2011) (emphasis by *Kosik*).]

Defendant asserts that the evidence does not support that he engaged in preoffense conduct directed at a victim for the primary purpose of victimization.

The record establishes that Melcer was taken to Werner's house and remained there while defendant and Werner drove to Detroit. In Detroit, defendant told Werner that he intended to rob Melcer once they returned, and he obtained a shotgun and different clothes for the specific purpose of carrying out this plan. "The timing of an offense, including watching the victim and waiting until the victim is alone before victimizing him or her, may be evidence of predatory conduct." *Kosik*, 303 Mich App at 160. Here, defendant knew that Melcer was alone at Werner's house. Melcer explained that he does not drive because he experiences seizures, which means he was effectively stranded in the home. Defendant ordered Werner to go for a drive before she returned to her house, presumably because he wanted to rob Melcer without Werner

being there. This constitutes preoffense conduct directed at Melcer for the primary purpose of his victimization, supporting the score.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Karen M. Fort Hood
/s/ Brock A. Swartzle