*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

GORDON DOYLE DIEHL,

        Defendant-Appellee.

UNPUBLISHED
December 14, 2023

No. 361551
Wexford Circuit Court
LC No. 2021-012992-FH

Before: REDFORD, P.J., and SHAPIRO and YATES, JJ.

PER CURIAM.

Defendant, Gordon Doyle Diehl, was convicted by a jury of unlawful imprisonment, MCL 750.349b, second-degree home invasion, MCL 750.110a(3), unlawful use of a self-defense spray device, MCL 750.224d(2), and assault and battery, MCL 750.81(1). The trial court then sentenced defendant to serve 5 to 15 years in prison for the unlawful-imprisonment conviction, 5 to 15 years in prison for the second-degree home invasion conviction, 330 days in jail for the unlawful use of a self-defense spray device conviction, and 93 days in jail for the conviction for assault and battery. In response to defendant's motion to correct an invalid sentence, the trial court decided that OV 8 had been improperly scored, so the trial court resentenced defendant to serve 55 months to 15 years in prison for the unlawful-imprisonment conviction, but the trial court left unchanged the sentences for the other convictions. Defendant appeals of right, challenging his convictions and sentences. We affirm.

## I. FACTUAL BACKGROUND

The conflict that led to defendant's crimes arose from defendant's affair with the victim's wife. After the affair ended, defendant first confronted the victim's wife and then, on January 23, 2021, confronted the victim, who was defendant's neighbor. On that date, the victim arrived home from his job at approximately 2:30 a.m. When the victim opened his back door and turned around to take his keys out of the door, defendant attacked him from behind. Defendant tried to cover the victim's mouth, and defendant told the victim that he had a gun. The victim could not see the gun, but the victim could feel the end of a gun at the top of his head. The victim grabbed the gun and

-1-

forced it away from the top of his head, and defendant started punching the victim on the top of the head to get him to let go of the gun.

The victim and defendant struggled with one another, and they eventually ended up in the victim's kitchen. Defendant handcuffed the victim's wrist to the handle of the oven door and then maced the victim on the right side of his face while the victim attempted to break off the oven door handle to get free. The victim could not get back on his feet because his ankle had been broken in the struggle, so the victim yelled for his wife, but she did not hear him because she was sleeping in another room on the same floor with a fan on. When defendant had his back turned to the victim, the victim reached into his pocket, retrieved his own can of pepper spray, and sprayed defendant. Defendant ran toward the victim's back door. Defendant began to turn around again, so the victim sprayed defendant a second time, and defendant ran out of the house.

At a jury trial in June and July 2021, defendant was found guilty of unlawful imprisonment, second-degree home invasion, unlawful use of a self-defense spray device, and assault and battery, but he was acquitted of assault with a pistol and felony firearm. On August 9, 2021, the trial court sentenced defendant to serve concurrent prison terms of 5 to 15 years for the offenses of unlawful imprisonment and second-degree home invasion as well as concurrent jail terms for unlawful use of a self-defense spray device and assault and battery. In addition, the judgment ordered defendant to pay $2,071.96 in restitution to the victim. On January 21, 2022, defendant moved to correct an invalid sentence. The trial court thereafter issued an order granting relief with regard to the scoring of offense variable (OV) 8, agreeing to resentence defendant, and promising to "allow for argument on the issue of restitution."

At the resentencing hearing on April 25, 2022, the trial court took testimony regarding the victim's medical expenses for the purpose of determining the amount of restitution due, arrived at a total amount of $2,071.96, but then agreed to postpone entering an award of restitution because defendant demanded to see "the receipts of actual payments." Turning to sentencing, the trial court noted that the rescoring of OV 8 had reduced the sentencing guidelines range from 43 to 86 months down to 36 to 71 months for unlawful imprisonment, so the trial court imposed a new and reduced sentence of 55 months to 15 years' imprisonment for that offense. But the trial court left in place the sentences for the other three offenses of conviction, including the prison term of 60 months to 15 years for second-degree home invasion. Defendant now appeals his convictions and sentences.

## II. LEGAL ANALYSIS

Defendant's brief filed by appointed counsel raises only sentencing issues, challenging the scoring of OV 9 and OV 10. In contrast, defendant has submitted a Standard 4 brief in which he contests the validity of his felony convictions and the restitution amount.[1] We shall first address the sentencing guidelines issues advanced by defendant's attorney, and then we shall consider the arguments made by defendant in his Standard 4 brief.

---

[1] "A 'Standard 4' brief refers to a brief filed on behalf of an indigent criminal defendant pursuant to Michigan Supreme Court Administrative Order No. 2004-6, Standard 4, 471 Mich c, cii (2005)." *People v Lowrey*, 342 Mich App 99, 103 n 1; 993 NW2d 62 (2022).

## A. OFFENSE VARIABLE SCORING

Defendant, through his attorney, challenges the trial court's scoring of OV 9 and OV 10. "This Court reviews for clear error a trial court's findings in support of a particular score under the sentencing guidelines but reviews de novo whether the trial court properly interpreted and applied the sentencing guidelines to the findings." *People v McFarlane*, 325 Mich App 507, 531-532; 926 NW2d 339 (2018). Clear error exists when this Court is "left with a definite and firm conviction that a mistake was made." *People v Abbott*, 330 Mich App 648, 654; 950 NW2d 478 (2019). "Under the sentencing guidelines, the circuit court's factual determinations . . . must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

### 1. OV 9

Defendant contends that the trial court erred by assessing 10 points for OV 9 because the victim's wife was never put in danger when she was asleep in a different room and did not witness defendant's attack against the victim. OV 9 addresses the "number of victims." MCL 777.39(1). A sentencing court must assess 10 points for OV 9 if "[t]here were 2 to 9 victims who were placed in danger of physical injury or death . . . ." MCL 777.39(1)(c). According to OV 9, "each person who was placed in danger of physical injury or loss of life" should be counted "as a victim." MCL 777.39(2)(a). "A person may be a victim under OV 9 even if he or she did not suffer actual harm; a close proximity to a physically threatening situation may suffice to count the person as a victim." *People v Baskerville*, 333 Mich App 276, 294; 963 NW2d 620 (2020) (quotation marks and citation omitted). "Points assessed under OV 9 must be based solely on the defendant's conduct during the sentencing offense." *People v Rodriguez*, 327 Mich App 573, 581-582; 935 NW2d 51 (2019).

Even though the victim's wife was in the home at the time, her testimony revealed that she did not have any idea what was occurring because she was sleeping, and there is no indication that she was in close proximity to a physically threatening situation because she was in another room. See *Baskerville*, 333 Mich App at 294-295 (holding that the trial court erred by assessing 10 points for OV 9 on the basis that a child was present in a different room of a home during a fatal shooting in the home, because the child was "not in any potential line of fire"). Because there is no evidence to suggest that the victim's wife was placed in danger, the trial court erred by assessing 10 points for OV 9. But the subtraction of 10 points for OV 9 would not change defendant's OV level, nor would it change defendant's recommended sentencing guidelines range. See MCL 777.64. Thus, defendant is not entitled to resentencing based on that scoring error alone. See *People v Francisco*, 474 Mich 82, 89-91; 711 NW2d 44 (2006).

### 2. OV 10

Defendant further argues that the trial court erred by assessing 15 points for OV 10 because the victim was not vulnerable. Specifically, defendant asserts that the victim had no physical or mental disabilities, that defendant and the victim were nearly the same age, and that defendant and the victim were not in a domestic partnership or a relationship where defendant could have abused his authority. Nevertheless, we conclude that OV 10 was properly scored at 15 points.

OV 10 addresses "exploitation of a vulnerable victim." MCL 777.40(1). A trial court must assess 15 points if "[p]redatory conduct was involved." MCL 777.40(1)(a). " 'Predatory conduct' means preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a). To " '[e]xploit' means to manipulate a victim for selfish or unethical purposes. . . ." MCL 777.40(3)(b). And " '[v]ulnerability' means the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(c). "Offense variables must be scored giving consideration to the sentencing offense alone, unless otherwise provided in the particular variable." *People v McGraw*, 484 Mich 120, 133; 771 NW2d 655 (2009). But MCL 777.40 specifically authorizes the consideration of facts outside the sentencing offense. See MCL 777.40(3)(a) (defining predatory conduct to include certain "preoffense conduct").

In *People v Cannon*, 481 Mich 152, 158-159; 749 NW2d 257 (2008), our Supreme Court identified factors a sentencing court should consider to determine whether a victim was vulnerable in the context of OV 10:

> (1) the victim's physical disability, (2) the victim's mental disability, (3) the victim's youth or agedness, (4) the existence of a domestic relationship, (5) whether the offender abused his or her authority status, (6) whether the offender exploited a victim by his or her difference in size or strength or both, (7) whether the victim was intoxicated or under the influence of drugs, or (8) whether the victim was asleep or unconscious.

"The mere existence of one of these factors does not automatically render the victim vulnerable." *Id*. at 159. In *People v Huston*, 489 Mich 451, 466; 802 NW2d 261 (2011), our Supreme Court expanded on the definition of vulnerability provided in *Cannon*:

> [T]o assess 15 points for OV 10, a court must find that an offender engaged in predatory conduct and exploited a vulnerable victim, using only the statutory definition of "vulnerability." . . . MCL 777.40(3)(c) defines "vulnerability" as the "readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation," and such vulnerability may or may not arise from the explicitly listed characteristics, relationships, and circumstances set forth in subdivisions (b) and (c). The statute does not mandate that this "susceptibility" be *inherent* in the victim. Rather, the statutory language allows for susceptibility arising from external circumstances as well.

The Supreme Court concluded that "the victim does not have to be inherently vulnerable" and "a defendant's 'predatory conduct,' by that conduct alone (*eo ipso*), can create or enhance a victim's 'vulnerability.' " *Id*. at 468.

Here, consistent with *Huston*, defendant's conduct could have, and did, create the victim's vulnerability. Defendant admitted that he watched the victim from his kitchen window and waited for the victim to return home. That, coupled with the fact that defendant brought pepper spray and handcuffs when he approached the victim, supports the inference that defendant was lying in wait for the victim so that he could unlawfully enter the victim's home and commit the charged crimes. Even though the victim may not be considered *inherently* vulnerable, defendant's conduct of lying in wait until the victim returned home from work at 2:30 a.m. gave rise to the victim's vulnerability

and constituted predatory conduct. Indeed, as our Supreme Court explained in *Huston*, 489 Mich at 464, "lying in wait constitutes quintessential 'predatory conduct.' " Therefore, in light of those facts, the trial court properly assessed 15 points for OV 10 because defendant engaged in predatory conduct toward the victim "for the primary purpose of victimization." MCL 777.40(3)(a).

## B. STANDARD 4 BRIEF

In a two-page Standard 4 brief, defendant makes three arguments in cursory fashion. First, he argues that his convictions for unlawful imprisonment and second-degree home invasion violate double-jeopardy standards. Second, he asserts that the trial court engaged in judicial misconduct. Third, he contests the trial court's approach to restitution. Those arguments are all meritless.

### 1. DOUBLE JEOPARDY

Defendant's Standard 4 brief merely mentions the term "double jeopardy" in passing, but that reference suggests that defendant's convictions for unlawful imprisonment and second-degree home invasion contravene double-jeopardy principles. The Double Jeopardy Clauses of the United States Constitution and the Michigan Constitution prohibit placing a defendant twice in jeopardy for the "same offense." US Const, Am V; Const 1963, art 1, § 15. One safeguard of the guarantee against double jeopardy "protect[s] the defendant from having more punishment imposed than the Legislature intended." *People v Dickinson*, 321 Mich App 1, 10; 909 NW2d 24 (2017) (quotation marks omitted). To decide whether the Legislature intended multiple punishments for violations of more than one statute arising from the same transaction or incident, courts must apply the "same elements" test. *Id*. at 11. Under that test, "a court must inquire whether each offense contains an element not contained in the other offense." *Id*. If "two distinct statutes cover the same conduct but each requires proof of an element the other does not, a presumption exists that the Legislature intended multiple punishments unless the Legislature expressed a contrary intent." *Id*. (quotation marks and citation omitted).

Defendant's convictions and concurrent sentences for the crimes of unlawful imprisonment and second-degree home invasion easily pass muster under the "same elements" test because each offense contains an element that the other offense does not. Specifically, unlawful imprisonment under MCL 750.349b requires " 'restrain[ing] another person,' " *People v Kosik*, 303 Mich App 146, 151; 841 NW2d 906 (2013), which second-degree home invasion under MCL 750.110a(3) does not require. *People v Jackson (On Reconsideration)*, 313 Mich App 409, 421-422; 884 NW2d 297 (2015). Similarly, second-degree home invasion requires unlawful entry into a dwelling, see *id*., while unlawful imprisonment does not. See *Kosik*, 303 Mich App at 151. Therefore, the trial court did not violate defendant's constitutional protection against double jeopardy when it allowed defendant's convictions for unlawful imprisonment and second-degree home invasion to stand or when it imposed concurrent prison terms for those convictions.

### 2. JUDICIAL MISCONDUCT

Next, defendant accuses the trial court of judicial misconduct at the resentencing hearing because the trial court: (1) disparaged defendant's status as a disabled veteran; (2) asked only for the prosecutor's argument on restitution; and (3) made inappropriate comments regarding prison. "A criminal defendant is entitled to a neutral and detached magistrate," but "[a] defendant claiming

judicial bias must overcome a heavy presumption of judicial impartiality." *People v Jackson*, 292 Mich App 583, 597-598; 808 NW2d 541 (2011) (quotation marks and citations omitted). We find no merit in any of defendant's claims of judicial misconduct.

Despite defendant's claim, the trial court did not disparage defendant's status as a disabled veteran. The trial court considered the nature of the charged offenses and opined that defendant "might . . . have some disability," but the court further noted that "whatever that disability might be, [defendant] was able to attack this victim inside of his house and chain him up." At most, this comment was critical of defendant's contention that he was a "disabled military combat veteran," so the court should reduce his prison term to enable him to receive medical assistance somewhere other than a facility run by the Michigan Department of Corrections.

Defendant insists that the trial court asked only for the prosecutor's arguments concerning restitution, but defendant fails to acknowledge that the court first asked defense counsel if she had any objections to the amount of restitution. The trial court also asked defense counsel if she wanted to question the victim after he testified about the injuries and expenses that he sustained as a result of defendant's conduct. Finally, the trial court asked defense counsel if she wanted to make any further statements after the victim testified. In sum, the trial court afforded defense counsel ample opportunity to comment on restitution concerns at the resentencing hearing.

Finally, defendant has failed to demonstrate how the trial court's comment about restitution influenced the sentencing or adversely affected his right to a fair hearing. Defense counsel argued that "there is a hardship on [defendant] to take anything over the $50" and requested that the trial court "rescind that order either for a year or for the remainder of his prison sentence, . . . so that he can pay when he gets out." The trial court acknowledged that "it's difficult for an inmate" to have "restitution paid for out of the Defendant's account," but the court stated, "I'm sorry, that's what a prison is for." The trial court offered that single, innocuous comment in response to defendant's argument against restitution. Therefore, defendant has failed to overcome the heavy presumption of judicial impartiality, so defendant is not entitled to relief on the basis of judicial misconduct.

3. RESTITUTION

Defendant's final challenge concerns the trial court's order to remit prisoner funds to cover restitution. Defendant complains: "It's cruel and unusual punishment by the trial judge to keep an order of $2071.96 for victim restitution still in abeyance putting my prison fund at no more than $50 a month during an economic national inflation." But the trial court did not resolve the issue of restitution as part of the resentencing hearing, and the trial court did not include any restitution amount in the amended judgment of sentence. The trial court issued an order to remit defendant's prisoner funds to pay court costs after his first sentencing hearing, but defendant acknowledges in his Standard 4 brief that "I have paid my court cost[s] of $384 as ordered on Apr[il] 25, 2022," so we cannot tell what defendant's concerns are at this point. A defendant "may not leave it to this Court to search for a factual basis to sustain or reject his position." *People v Traylor*, 245 Mich App 460, 464; 628 NW2d 120 (2001) (quotation marks and citation omitted). Given defendant's failure to establish the factual predicate for his argument that the order to remit prisoner funds to pay restitution amounts to cruel or unusual punishment, we need not consider that claim. *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008).

Affirmed.

/s/ James Robert Redford
/s/ Douglas B. Shapiro
/s/ Christopher P. Yates