*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

V

MIGUEL ANGEL POZOS-SILVA,

        Defendant-Appellant.

UNPUBLISHED
May 21, 2026
9:12 AM

No. 376607
Ingham Circuit Court
LC No. 24-000876-FC

Before: TREBILCOCK, P.J., and BOONSTRA and LETICA, JJ.

PER CURIAM.

Following a preliminary examination, defendant was bound over on one count of kidnapping, MCL 750.349, and one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(c) (sexual contact occurs during commission of another felony). He appeals by leave granted[1] the circuit court's denial of his motion to quash the bindover. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

On August 4, 2024, the complainant, JDJ, then 16 years old,[2] was outside at night waiting hours for a promised ride that never appeared. At the time of the alleged offenses, JDJ was living with his grandmother at his uncle's home. Because JDJ did not get along with other relatives in the home, JDJ was asked to leave.[3] JDJ had a cellular telephone but did not have a service provider. He stood near a building in an attempt to use its Wi-Fi connection, but his phone ran out of power.

---

[1] *People v Pozos-Silva*, unpublished order of the Court of Appeals, entered November 19, 2025 (Docket No. 376607).

[2] An interpreter translated English into Spanish for defendant's benefit. And in light of JDJ's age, spectators viewed the proceedings from another location during his testimony. The parties do not challenge the manner in which the preliminary examination was held.

[3] After JDJ's contact with defendant, JDJ's grandmother picked him up from the hospital, and he was allowed to return home.

He was cold and it was nearly midnight. Defendant called out to JDJ and asked how old he was, why he was out so late, and if he needed help. Because defendant was "acting kind," JDJ responded that he had been stranded all day, he was 16 years old, he was hungry, he needed to charge his phone, and he needed to connect to Wi-Fi to contact someone. Defendant stated that he could help. After defendant patted JDJ down, they walked to defendant's home. JDJ was unsure if defendant was under the influence of drugs or alcohol. As they spoke, defendant was crying and tried to hug JDJ. At that time, JDJ did not think "much of it."

Defendant took JDJ upstairs to charge the phone. They went to defendant's bedroom. There was a bed, computer, television, and bathroom there, and defendant advised that he was gay. Although defendant also gave JDJ some food, he did not eat it because defendant began to act "like weird and stuff." Defendant frequently told JDJ that he should take a shower. Once the phone had sufficient power, JDJ advised defendant that he would message someone. Defendant repeatedly advised JDJ that he should not contact anyone. Additionally, defendant said that he was going to use his own phone to record their interaction, for his own safety, and "to make sure nothing happens." But, according to JDJ, defendant never recorded anything.

In the bedroom, defendant placed his arms around JDJ and pulled him back. Defendant kept touching JDJ and inappropriately touched JDJ's butt. Defendant had advised JDJ that there were more people in the home. In light of defendant's persistent touching, the presence of other people in the home,[4] and the continuous advice that JDJ should not contact anyone, JDJ became nervous and did not want to message someone in front of defendant. JDJ proceeded to go into the bathroom after defendant slapped JDJ on the butt. Ultimately, JDJ entered the bathroom and contacted someone who called the police.

JDJ could not recall asking if he could leave, but remembered saying that he was going to call someone so that he could leave. Defendant told JDJ not to contact anyone saying that someone might be looking for him. When JDJ asked for access to the Wi-Fi, defendant told JDJ not to contact anyone and kept questioning whether JDJ had reached out to someone. Defendant grabbed JDJ's head, and pulled his head in, kissing JDJ on the cheek.[5] And, at one point in the bedroom, defendant was behind JDJ, reached his arm around JDJ's chest area, and caused JDJ to fall on the bed. Although defendant laughed, JDJ pushed defendant's arm off. This incident made JDJ feel uncomfortable and believe that he was unable to leave. JDJ had been told that there was another man in the home. Because of defendant and the presence of another man, JDJ was scared to leave, even after the police arrived.

On cross-examination, JDJ acknowledged that he willingly went to defendant's home, was offered food, and was permitted to charge his phone and access the Wi-Fi. Although JDJ testified that he was touched by defendant, JDJ acknowledged that he was not held in the home. JDJ never asked defendant if he could leave. JDJ testified that he did not ask to leave because he was "too

---

[4] After JDJ asked, defendant advised that there were two girls present in the home, and one girl was between seven and nine years of age. Defendant made an inappropriate comment and sexual gesture about the young girl.

[5] Later, JDJ said defendant kissed him on the forehead.

nervous, too scared, in a way." There was also testimony that defendant was bigger than JDJ and that defendant stated there was another man in the home. In light of JDJ's thought that he could not leave, he did not ask to leave. On redirect examination, JDJ reiterated that he felt like he could not leave because defendant was bigger in size than JDJ, and there were other people in the home. Consequently, JDJ was hesitant to leave. When asked to provide more details, JDJ testified:

> Just like, it was like . . . I couldn't move. It was like, I was too scared to, like I was so scared that I really couldn't even move. And, like, it was making me hesitant to do what was needed to be done. . . . [A]t first, I didn't have the feeling. It started after he was, like, started to touch me and stuff, and then when he kissed me on my forehead and kept, and he told me he was gay and stuff. And it just that's when the feeling started. I couldn't feel like I shouldn't ask to leave when he started asking me. I shouldn't, telling me and stuff that I shouldn't call or text nobody.

After defendant saw JDJ on the phone, defendant suggested that JDJ should not text anyone because someone might be looking for JDJ. This suggestion caused JDJ to be "weirded out a little," and he locked himself in the bathroom to prevent defendant from "trying to do anything." JDJ contacted his girlfriend, and the message identified JDJ's location. The police arrived at defendant's home, and JDJ gave a statement to the police.

Defendant opposed the bindover of the kidnapping charge, asserting that JDJ's voluntary presence in the home and the aid given to JDJ countered the restraint element. The district court determined that defendant was appropriately bound over on the charges:

> A preliminary exam is sort of a preview of the prosecutor's case. And instead of beyond a reasonable doubt, which is what's required for a conviction, preliminary exam, this hearing asks the [c]ourt to consider whether there's a reasonable belief that a crime was committed and a reasonable belief that the accused, and if there is a reasonable belief that a crime is committed and a reasonable belief that the accused was involved, then it goes on to circuit court for felony proceedings. So, you know, the [c]ourt doesn't even necessarily have to believe it myself, but that a reasonable person could draw that conclusion. These cases are always terrible because there's a limit to what the [c]ourt can know about what someone is thinking. And there's a real danger in imagining what someone may think. Based [o]n the standard of a reasonable belief. Of a reasonable person and based on the outline of the law, the [c]ourt is going to bind over on kidnapping, based on the victim's testimony, that primarily what happened in the bedroom. That when he was pushed on, his testimony that when he was pushed onto the bedroom, that—that would be sufficiently intimidated, and based on the testimony that it was told well, you know, people might be looking, you probably shouldn't try to contact them. I think that, given the circumstances of that day, given what we've seen on the victim's personality, that that would be very intimidating to him. Now, I will say to all of you we haven't had an opportunity to hear from [defendant]. He may choose to testify, and that would illuminate the case in front of the jury, in front of more people. He, of course, would never have to testify either. He has a right to remain silent. So, based on what we've heard in this hearing. I believe that this young man was intimidated. And I believe that the

accused, [defendant], wanted and intended. Did keep the victim in the apartment for the purpose of engaging in criminal sexual contact with the victim. That criminal sexual contact—contact was touching the victim's buttocks, which is an element of criminal sexual conduct in the second degree. The kiss on that—the victim was uncomfortable. In criminal sexual conduct cases, the victim doesn't necessarily have to say outright. I am uncomfortable, but the fact that they felt is legally sufficient.

[    ] I believe upon review of this, a reasonable person could hear the story, and granted at these preliminary exams, we tend to hear one side of the story, but I believe a reasonable person could have heard what we've heard in these two sessions, and believe that this happened. There are also obviously many who may not agree, but it meets the legal standard for bindover.

In the circuit court, defendant moved to quash the kidnapping charge[6] on the ground that JDJ's testimony did not establish the element of restraint, as required by the kidnapping statute. Specifically, defendant asserted that he brought JDJ to his home where others were present, offered JDJ food, allowed JDJ to charge his phone, and gave JDJ access to the Wi-Fi. Because JDJ was not physically restrained by defendant, the only act of restraint occurred by JDJ when he locked himself in the bathroom. In contrast, the prosecutor claimed that JDJ testified that he did not feel comfortable leaving and that defendant should have been aware of this when JDJ refused defendant's advances. The circuit court concluded that the district court did not abuse its discretion by binding defendant over on the kidnapping charge and denied defendant's motion. From this denial, defendant appeals.

## II. ANALYSIS

Defendant asserts that the district court committed an error of law and an abuse of discretion by binding the kidnapping charge over for trial because defendant JDJ voluntarily went to defendant's home, was offered food, and was offered access to electricity and the Wi-Fi without interference with JDJ's liberty and movement. We disagree.

"A circuit court's decision to grant or deny a motion to quash charges is reviewed de novo to determine if the district court abused its discretion in binding over a defendant for trial." *People v Francis*, 347 Mich App 560, 563; 16 NW3d 323 (2023) (quotation marks and citation omitted). An abuse of discretion occurs when the lower court's decision falls outside the range of principled outcomes. *People v Al-Shara*, 311 Mich App 560, 566; 876 NW2d 826 (2015). "When reviewing a district court's bindover decision, [the appellate court] review[s] the court's determination regarding the sufficiency of the evidence for an abuse of discretion, but . . . review[s] the court's

---

[6] In the written motion, defendant also contested the proofs to support CSC-II and that the dismissal of the kidnapping charge would result in the reduction of the CSC-II to fourth degree criminal sexual conduct. But, at oral argument on the motion, defendant acknowledged that there was a factual issue pertaining to the CSC-II offense.

rulings concerning questions of law de novo." *People v Flick*, 487 Mich 1, 9; 790 NW2d 295 (2010).

"The primary function of the preliminary examination is to determine whether a crime has been committed and, if so, whether there is probable cause to believe that the defendant committed it." *People v Henderson*, 282 Mich App 307, 312; 765 NW2d 619 (2009). "The district court must bind a defendant over to the circuit court if it determines that a felony was committed and that there was probable cause to charge the defendant." *Francis*, 347 Mich App at 563-564. "A district court's finding of probable cause will not be disturbed unless the determination is wholly unjustified by the record." *Id*. at 564 (quotation marks and citation omitted). The district court does not render the ultimate findings of fact. See *People v Taylor*, 316 Mich App 52, 58; 890 NW2d 891 (2016). When the evidence conflicts and presents a reasonable doubt regarding the defendant's guilt, the defendant should be bound over because the issue is for resolution by the jury. *Id*. "To determine whether dismissal is appropriate for the failure to demonstrate the defendant's intent, the facts and circumstances or context of the defendant's conduct may be considered." *People v Burkman*, 341 Mich App 734, 749; 992 NW2d 341 (2022), rev'd in part on other grounds 513 Mich 300 (2024).

Kidnapping is defined under MCL 750.349, which, in relevant part provides:

(1) A person commits the crime of kidnapping if he or she knowingly restrains another person with the intent to do 1 or more of the following:

* * *

(c) Engage in criminal sexual penetration or criminal sexual contact prohibited under chapter LXXVI with that person.

* * *

(2) As used in this section, "restrain" means to restrict a person's movements or to confine the person so as to interfere with that person's liberty without that person's consent or without legal authority. The restraint does not have to exist for any particular length of time and may be related or incidental to the commission of other criminal acts.

The parties dispute whether defendant's alleged actions constitute restraint of JDJ as defined in MCL 750.349(2). Statutes are interpreted in accord with the legislative intent, and the plain language of the statute presents the most reliable evidence of that intent. *People v Rea*, 500 Mich 422, 427; 902 NW2d 362 (2017). A dictionary definition may be consulted when a word or phrase is not defined by the statute. *Id*. at 428. But in the present case, the kidnapping statute defines "restrain" to mean a restriction on a person's movements or a confinement such that it interferes with the person's liberty and without the person's consent. The Legislature expressly failed to place any time restrictions or minimum period upon the restraint. Indeed, restraint may be satisfied when the complainant is "held for even a moment." See *People v Chelmicki*, 305 Mich App 58, 69; 850 NW2d 612 (2014). And the prosecutor's burden of proof to show that the victim was restrained does not require a showing that the victim resisted the restraint. See *People v Kosik*, 303 Mich App 146, 156; 841 NW2d 906 (2013).

Because of a disagreement with family, JDJ was asked to leave his residence and was engaged in "couch surfing." JDJ had been outside and alone for nearly 12 hours. He was only 16 years old and left to fend for himself. Defendant called out to JDJ and offered to assist him. Despite defendant patting down JDJ to ensure that he did not have any weapons, defendant nevertheless seemed kind, and JDJ walked with him to defendant's home. But once inside defendant's bedroom, defendant began to inappropriately touch JDJ. Specifically, defendant grabbed JDJ from behind and around the torso in the bedroom. JDJ had to remove defendant's hand. Defendant also kissed JDJ on the cheek or forehead. Additionally, defendant slapped JDJ on his rear end. Defendant also made inappropriate comments and gestures about a young girl purportedly present in the home and advised that there was another man in the home. And defendant, a man larger than JDJ, attempted to dissuade JDJ from making contact with others. These actions altered JDJ's view of defendant. Although hungry, JDJ did not eat the food that defendant provided. Once JDJ's phone had sufficient power, he locked himself in the bathroom and contacted his girlfriend for help.

Defendant submits that restraint could not be established in light of defendant's beneficial acts to JDJ, including the food, the phone charger, and the use of the Wi-Fi. Moreover, defendant insinuates that JDJ simply surmised that he was restrained. To the contrary, there was testimony that defendant attempted to take advantage of JDJ's youth and inappropriately touched him repeatedly. Although JDJ did not expressly ask whether he was restrained or whether he could leave,[7] MCL 750.349 imposes no such requirement upon a complainant. Evidence of restraint may even be for a moment in time and the complainant need not resist. *Chelmicki*, 305 Mich App at 69; *Kosik*, 303 Mich App at 156.

Indeed, when the evidence conflicts, the defendant should be bound over because the issue is for the resolution by the jury. *Taylor*, 316 Mich App at 58. In light of the conflicts in the evidence, the district court did not abuse its discretion in binding defendant over for trial, and, therefore, the circuit court did not abuse its discretion in denying defendant's motion to quash.

Affirmed.

/s/ Christopher M. Trebilcock
/s/ Anica Letica

---

[7] Nonetheless, JDJ removed defendant's hand and went to the bathroom, locking the door, in order to use his phone to contact his girlfriend for help.