# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEMONDE BENDI KEMP,

        Defendant-Appellant.

UNPUBLISHED
December 27, 2018

No. 339791
Wayne Circuit Court
LC No. 17-002205-01-FC

---

Before: GLEICHER, P.J., and BORRELLO and BECKERING, JJ.

PER CURIAM.

Defendant, Demonde Bendi Kemp, appeals as of right his jury convictions for third-degree criminal sexual conduct (CSC-3), MCL 750.520d(1)(b) (force or coercion used to accomplish penetration), and assault with intent to commit criminal sexual conduct involving penetration, MCL 750.520g(1).[1] The trial court sentenced defendant to 12 to 15 years' imprisonment for the CSC 3 conviction and 7 to 10 years' imprisonment for the assault with intent to commit criminal sexual conduct involving penetration conviction. On appeal, defendant challenges the trial court's scoring of certain offense variables and its imposition of a sentence greater than that recommended by the minimum sentencing guidelines. We affirm in part, vacate in part, and remand for resentencing.

## I. RELEVANT FACTS

This case arises out of a sexual assault perpetrated by defendant against the victim in July 1999. According to the victim's testimony at trial, she lived with her then-boyfriend in a first-floor apartment in northwest Detroit. On the night of the incident, the victim and her boyfriend went to the movies. After they returned home, he left for work around 1:00 a.m., locking all of the doors on the way out, and she went to bed. A rattling noise coming from outside the bedroom door awakened the victim around 4:30 a.m. Believing that her boyfriend had returned home, she remained in bed with the covers pulled over her head. She then heard the sound of rummaging in the bedroom, as if someone was going through the nightstand next to the bed.

---

[1] The jury acquitted defendant of three counts of first-degree criminal sexual conduct, MCL 750.520b, two counts of CSC 3, and one count of first-degree home invasion, MCL 750.110a(2).

-1-

Still thinking that her boyfriend had returned, the victim pulled the covers from over her head, and immediately felt a hand grab her throat so that she could not scream. The intruder said he would kill her if she screamed, which the victim believed to be an honest threat. It was dark and the power was out, so the victim could only see the intruder well enough to tell that he was African-American and wore a striped shirt.

The intruder pulled the covers off the victim, tore off her underwear, and with his hand still on her throat, put his penis into her vagina. He struggled to do so, as the victim was not ready to have sex. The intruder then pulled the victim off the bed and onto her knees on the floor and forced her to perform oral sex on him. He then turned her around to face the bed and penetrated her vaginally from behind. The victim testified that the intruder did not wear a condom during any of the sexual activity. After the intruder completed his sexual assault, he asked the victim where she kept the money and the gun, and when her boyfriend was coming back. The victim indicated that she did not know the answers to his questions. The intruder then ripped the phone cord off the landline phone in the bedroom and left. The victim got up from the bed and went to the kitchen, where she grabbed another landline phone cord and plugged it into the damaged phone in the bedroom. She first called 911 and then her boyfriend.

The victim's boyfriend drove her to Detroit Receiving Hospital where Ashok Subramanin, M.D., performed a vaginal examination and a rape kit was completed. According to Dr. Subramanin, the victim described pain in the middle of her vagina and pain on urination since the assault. She also described a deviation of the urinary stream when she urinated. Dr. Subramanin prescribed medication to prevent pregnancy and chlamydia. He also referred her to her physician to do HIV testing and advised her that she was at risk for other sexual diseases because of the encounter. The rape kit was transferred to the Detroit Police Department and became one of the thousands of rape kits that sat undiscovered and untested for years. It was discovered in 2009 and finally tested in 2014. The DNA found in the victim's rape kit matched defendant's DNA, which was in the system due to a prior arrest. Kirk Deleeuw, a forensic scientist with the Michigan State Police, testified that the chances that the DNA profile of a Caucasian or African-American male chosen at random from the population would match that of defendant was 1 in 33 quadrillion, and for a Hispanic male chosen at random, it was 1 in 54 quadrillion.

A jury tried and convicted defendant as indicated. The trial court sentenced defendant under the 1999 sentencing guidelines. At sentencing, the trial court confirmed the scoring of the offense variables (OVs) with the parties. Over defendant's objection, the trial court assessed OV 3 (physical injury to victim) at 10 points, OV 7 (aggravated physical abuse) at 50 points, OV 10 (exploitation of a vulnerable victim) at 15 points, and OV 11 (criminal sexual penetrations) at 50 points. Without waiving his objections, defendant agreed with the prosecution that the minimum sentencing guidelines range for his CSC-3 conviction was 43 to 86 months. The prosecution contended that an upward departure sentence was warranted, arguing that the sentencing guidelines did not take into account all of defendant's assessed OV points and the lingering effects of the criminal sexual assault on the victim. The trial court agreed with the prosecution's assessment and imposed an upward departure sentence of 12 to 15 years' imprisonment for the CSC 3 conviction.

## II.  ANALYSIS

## A.  OFFENSE VARIABLES

On appeal, defendant first contends that the trial court erred in the scoring of OVs 3, 7, 10, and 11.  We disagree.[2]  This Court reviews de novo issues of statutory interpretation, *People v Hammons*, 210 Mich App 554, 557; 534 NW2d 183 (1995), including issues involving the interpretation and application of the legislative sentencing guidelines, *People v Ambrose*, 317 Mich App 556, 560; 895 NW2d 198 (2016).  The trial court's factual determinations are "reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).  "When calculating the sentencing guidelines, a trial court may consider all record evidence, including the contents of a PSIR, plea admissions, and testimony presented at a preliminary examination." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015).  The trial court may also rely on reasonable inferences arising from the record evidence. *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012).  A finding is clearly erroneous if the appellate court is "left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011), citing *People v Burrell*, 417 Mich 439, 449; 339 NW2d 403 (1983).  The application of the facts to the law, or whether the facts are adequate to satisfy the statutory scoring conditions, is a question of statutory interpretation reviewed de novo. *Hardy*, 494 Mich at 438, citing *People v Babcock*, 469 Mich 247, 253; 666 NW2d 231 (2003).

### 1.  OV 3

OV 3 addresses physical injury to a victim, MCL 777.33(1),[3] and may be assessed at 10 points if "[b]odily injury requiring medical treatment occurred to a victim," MCL 777.33(1)(d).[4] Bodily injury involves "anything that the victim would, under the circumstances, perceive as some unwanted physically damaging consequence." *People v McDonald*, 293 Mich App 292, 298; 811 NW2d 507 (2011), citing *People v Cathey*, 261 Mich App 506, 513-517; 681 NW2d 661 (2004).  The phrase "requiring medical treatment" refers to "the necessity for treatment and not the victim's success in obtaining treatment." MCL 777.33(3).

The trial court assessed 10 points for OV 3 based on testimony that the examining physician treated the victim prophylactically for sexually transmitted diseases and possible pregnancy resulting from the assault.  In the context of a CSC offense, pregnancy and sexually transmitted diseases constitute "bodily injury requiring medical treatment" under OV 3.  See, e.g., *McDonald*, 293 Mich App at 298 (holding an infection suffered as a result of the rape

---

[2]  Although this opinion vacates defendant's sentences and remands to the trial court for resentencing for the reasons explained in subsection B, the trial court will again be required to score the at-issue OVs; thus, discussion of the validity of the trial court's scoring of these factors is not a moot point.

[3]  Unless otherwise noted, the language of the relevant statutes is the same today as in 1999.

[4]  This provision was subsection (c) in the 1999 statute.

constituted "bodily injury requiring medical treatment"); (holding that, in the context of CSC cases, "bodily injury" includes pregnancy). In the case at bar, defendant did not use a condom when he twice penetrated the victim vaginally. In light of the nature of this assault, and given the examining physician's judgment that prophylactic treatment for pregnancy and STDs through medication was necessary, we conclude that the trial court did not err in assessing 10 points for OV 3.[5]

## 2. OV 7

OV 7 addresses aggravated physical abuse. MCL 777.37(1). In 1999, OV 7 could be assessed at 50 points if "[a] victim was treated with terrorism, sadism, torture, or excessive brutality" MCL 777.37(1)(a). "Terrorism" meant "conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(2)(a). "Sadism" meant "conduct that subjects a victim to extreme or prolonged pain or humiliation and [was] inflicted to produce suffering or for the offender's gratification." The relevant inquiries for scoring OV 7 are "(1) whether the defendant engaged in conduct beyond the minimum required to commit the offense; and, if so, (2) whether the conduct was intended to make a victim's fear or anxiety greater by a considerable amount." *Hardy*, 494 Mich at 443-444. The trial court should first determine a "baseline for the amount of fear and anxiety experienced by a victim of the type of crime or crimes at issue." *Id*. at 442-443. In doing so, the court should "consider the severity of the crime, the elements of the offense, and the different ways in which those elements can be satisfied," and then determine "the fear or anxiety associated with the minimum conduct necessary to commit the offense." *Id*. at 443.

In this case, the trial court did not explicitly determine "the fear or anxiety associated with the minimum conduct necessary to commit the offense." However, the record supports the trial court's finding of terrorism, i.e., that defendant engaged in conduct beyond that which was necessary to commit the offense and was designed to substantially increase the fear and anxiety of the victim. Defendant grabbed the victim by the throat, pressed tightly to the point that she had trouble breathing, and, with his hand on her throat, took the extra step of telling her that he would kill her if she screamed. The victim testified that she was shocked, scared, and believed this to be a sincere threat. Putting a victim in imminent fear of death is conduct designed "to substantially increase the fear and anxiety" of the victim. See, e.g., *People v Hardy*, 494 Mich at 442-443 (taking the extra step of racking a shotgun while pointing it at the victim during a carjacking is conduct designed to put the victim in fear beyond the usual circumstances

---

[5] Defendant's reliance on *People v Armstrong*, 305 Mich App 230; 851 NW2d 856 (2014), is misplaced. In *Armstrong*, the trial court assessed OV 3 at 10 points based solely on a report that the prosecution never admitted into evidence. *Armstrong*, 305 Mich App at 246. Further, even if the prosecution had admitted the report into evidence, no evidence was admitted showing that the victim's injury necessitated medical treatment. This Court reversed, holding that the actual record did not support the trial court's assessment of OV 3. *Id*. By contrast, the record in the case at bar clearly supports the court's finding. The victim's and Dr. Subramanin's testimonies show that she needed and received prophylactic medical treatment.

accompanying carjacking). Further, after the initial penetration, defendant forced the victim to the floor on her knees and demanded that she perform oral sex on him. He then he turned her around and penetrated her vagina from behind. The trial court found that this conduct was designed to substantially increase the victim's fear and anxiety during the offense. Defendant could have committed the CSC-3 offense without threatening the victim, subduing her with a chokehold, or penetrating her repeatedly. Therefore, the trial court properly assessed OV 7 at 50 points.

### 3. OV 10

OV 10 addresses the exploitation of a vulnerable victim. MCL 777.40(1). Exploitation means the manipulation of "a victim for selfish or unethical reasons," MCL 777.40(3)(b), and " 'vulnerability' means the readily apparent susceptibility of a victim to injury, physical restraint, persuasion or temptation," MCL 777.40(3)(c). Susceptibility need not be inherent in the victim, but may arise from external circumstances. *People v Kosik*, 303 Mich App 146, 160; 841 NW2d 906 (2013), citing *People v Huston*, 489 Mich 451, 463; 802 NW2d 261 (2011). OV 10 may be assessed at 15 points if "predatory conduct was involved" in the commission of the offense. MCL 777.40(1)(a). Predatory conduct is "preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a).

The Michigan Supreme Court has outlined a number of factors to aid courts in determining whether OV 10 should be assessed at 15 points:

(1) Did the offender engage in conduct before the commission of the offense?

(2) Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation?

(3) Was victimization the offender's primary purpose for engaging in the preoffense conduct? [*People v Cannon*, 481 Mich 152, 162; 749 NW2d 257 (2008).]

Not all preoffense conduct is predatory; rather, predatory conduct involves " 'only those forms of "preoffense conduct" that are commonly understood as being "predatory" in nature . . . as opposed to purely opportunistic criminal conduct or "preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection." ' " *Kosik*, 303 Mich App at 160, quoting *Huston*, 489 Mich at 462, quoting *Cannon*, 481 Mich at 162. The timing of an offense, such as waiting until the victim is alone before assaulting him or her, may be evidence of predatory conduct. *Kosik*, 303 Mich App at 160, citing *People v Witherspoon*, 257 Mich App 329, 336; 670 NW2d 434 (2003).

The trial court assessed OV 10 at 15 points based primarily on the victim's testimony that defendant asked her when her boyfriend was coming back. The trial court inferred from this testimony that defendant had been watching the house prior to entering, that his lying in wait was to ensure that the victim's boyfriend had left and that the victim was alone in a dark house and asleep in her bed, and that this conduct was primarily for the purpose of victimization. The trial court found that this was predatory conduct. This is evidence of predatory conduct under

*Cannon* and *Kosik*, and the trial court properly inferred it from the lower court record. See *Cannon*, 481 Mich at 162; *Kosik*, 303 Mich App at 160. The record also supports a finding that the victim was a vulnerable victim because she was sleeping at the time that defendant entered the apartment, leaving her susceptible to injury or physical restraint. See *Huston*, 489 Mich at 463; *Kosik*, 303 Mich App at 160. Because a preponderance of the evidence supports the trial court's finding that defendant exploited a vulnerable victim for his own gratification, we are not left with a "definite and firm conviction" that an error was made. *Armstrong*, 490 Mich at 289, citing *Burrell*, 417 Mich at 449. Thus, we conclude that the trial court properly assessed OV 10 at 15 points.

### 4. OV 11

OV 11 addresses criminal sexual penetrations. MCL 777.41(1). OV 11 may be assessed at 50 points if "[t]wo or more criminal sexual penetrations occurred." MCL 777.41(1)(a). The trial court must "[s]core all sexual penetrations of the victim by the offender arising out of the sentencing offense." MCL 777.41(2)(a). The court may score OVs on facts found by the judge by a preponderance of the evidence. See *People v Lockridge*, 498 Mich 358, 399; 870 NW2d 502 (2015); *Hardy*, 494 Mich at 438. Each vaginal and oral penetration is considered a separate sexual penetration for the purposes of OV 11. *People v Johnson*, 298 Mich App 128, 132; 826 NW2d 170 (2012). The trial court may not assess a defendant any points for the one penetration that "forms the basis of a first- or third-degree criminal sexual conduct offense." MCL 777.41(2)(c). The trial court may assess points for any penetration that occurred at the same time as the one forming the basis for the conviction regardless of whether defendant was convicted of the other penetrations. See *People v McLaughlin*, 258 Mich App 635, 676; 672 NW2d 860 (2003). Even if the jury declined to convict the defendant of a particular penetration, the trial court may reach a different finding for the purposes of sentencing because the court's findings in scoring the guidelines only need to be proven by a preponderance of the evidence. *Hardy*, 494 Mich at 438.

The record supports a finding that defendant penetrated the victim three times, two more than the one penetration for which he was convicted. The victim testified that defendant penetrated her twice vaginally and once orally. The jury convicted defendant of one count of CSC 3 for one of the penetrations, suggesting that they found credible the victim's testimony that defendant sexually assaulted her in the middle of the night. Based on the victim's testimony, the trial court found that defendant had penetrated the victim two additional times. Contrary to defendant's contention, the jury did not need to convict him of the other two penetrations before the trial court could find them relevant to sentencing. See *McLaughlin*, 258 Mich App at 676. Therefore, the trial court properly assessed OV 11 at 50 points. Accordingly, we affirm the trial court's scoring of OVs 3, 7, 10, and 11.

### B. UPWARD DEPARTURE

Defendant next contends that the trial court erred by departing upward from the sentencing guidelines. A defendant's sentence that "departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *Lockridge*, 498 Mich at 392. This Court reviews a question of whether a sentence is reasonable for an abuse of discretion. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). The trial court abuses its discretion

when its decision violates the principle of proportionality. *People v Dixon-Bey*, 321 Mich App 490, 520; 909 NW2d 458 (2017), citing *Steanhouse*, 500 Mich at 471.

In reviewing whether a departure sentence is reasonable, this Court must consider whether the trial court conformed to the principle of proportionality set forth in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990). *Steanhouse*, 500 Mich at 471. The key test of proportionality is not whether the court departed or adhered to the guidelines' recommended range, but whether the sentence is proportionate to the seriousness of the matter, including "the seriousness of the circumstances surrounding the offense and the offender." *Steanhouse*, 500 Mich at 474-475. In making this determination, the trial court "must take into account the nature of the offense and the background of the offender." *Steanhouse*, 500 Mich at 472, quoting *Milbourn*, 435 Mich at 651.

In addition, a trial court must "justify the sentence imposed in order to facilitate appellate review." *Lockridge*, 498 Mich at 392. This justification should include an "explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *Dixon-Bey*, 321 Mich App at 525, quoting *People v Smith*, 482 Mich 292, 311; 754 NW2d 284 (2008). Factors for determining whether an upward departure is more proportionate to a sentence within the guidelines include "(1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight." *Dixon-Bey*, 321 Mich App at 525, citing *People v Houston*, 448 Mich 312, 321-325; 532 NW2d 508 (1995), and *Milbourn*, 435 Mich at 660 n 27.

As calculated by the trial court, defendant's sentencing guidelines score resulted in a recommended minimum sentence of 43 to 86 months of imprisonment for his criminal sexual assault of the victim. However, the trial court sentenced defendant to 144 to 180 months, a departure of 58 months over the recommended maximum minimum sentence. In support of the upward departure, the trial court explained that the guidelines were "woefully [inadequate] to address the severity of the crime that [was] committed." The court opined that it was every woman's worst nightmare to be asleep in bed, in the sanctuary of her own home, and have someone climb through a window in the dead of night and sexually assault her, penetrating her multiple times. The trial court's reasoning implied that the guidelines did not take into account this level of violation. The trial court also justified its departure sentence by reasoning that the guidelines did not adequately take into account the effect that the crime had on the victim's life or on interactions with her family. The court noted that, because of the assault, the victim had to endure having a rape kit performed, suffered from addiction, and still finds it difficult to be alone.[6] The court also referenced testimony from the victim's ex-husband, who said that the

---

[6] The victim testified at trial that she only stayed in the apartment for a few months after the offense occurred, and she would not stay there alone. When her boyfriend worked late, he would take her to his mother's house and then pick her up on his way home. Her landlord let her break the lease and she moved out. She testified that since the assault in 1999, she remains scared, goes to counseling, cannot stay home alone, and cannot concentrate sometimes because in her head she is scared for her safety. She watches her surroundings everywhere she goes, gets scared

victim startled if he touched her or moved slightly in the middle of the night. Finally, the trial court justified its departure from the guidelines by reasoning that, given the nature of this crime, it was likely at the time defendant committed this sexual assault that he would commit future crimes.

The record and the trial court's reasoning supports imposition of a departure sentence. This Court has held that the guidelines do not adequately account for the effect of an assault on the lives of the victim and her family or for the need to protect potential victims. See *People v Armstrong*, 247 Mich App 423, 425-426; 636 NW2d 785 (2001) (holding that the guidelines do not account for the effect on victims' lives outside of therapy and the effect on the victim's family, and concluding that the trial court did not err in finding that the need to protect potential victims is not considered by the guidelines). The record supports the trial court's reasoning that the sexual assault had significant and long-lasting effects on the victim and on her relationships with members of her family. With regard to the need to protect potential victims, the record shows that at the time defendant committed the sexual assault at issue here, his criminal record suggested a low potential for rehabilitation and a willingness to engage in dangerous and violent conduct. Defendant committed his first crime (carrying a concealed weapon), a class E crime against public safety, shortly before he turned 15 years old. According to the presentence investigation report (PSIR), he entered a plea in exchange for probation, but probation "closed unsatisfactorily as defendant failed to attend school or complete court ordered counseling under the name Demonde Bendi Kemp." In light of defendant's failure to complete probation for his first crime satisfactorily and the escalating trajectory of his criminal activity, as evidenced by the crime at issue, we cannot say that the trial court abused its discretion in deeming an upward-departing sentence warranted. The trial court arguably did not, however, include an explanation of why the sentence imposed, which exceeds the maximum range of the minimum sentencing guidelines by 58 months, is more proportionate to the offense and the offender than a different sentence would have been. *Dixon-Bey*, 321 Mich App at 525.

Regardless, defendant correctly notes in a footnote of his appellate brief that the trial court erred in imposing minimum sentences that exceed two-thirds of the statutory maximums allowed for defendant's convictions, in violation of MCL 769.34(2)(b). Pursuant to MCL 769.34(2)(b), "[t]he court shall not impose a minimum sentence, including a departure, that exceeds 2/3 of the statutory maximum sentence." The statutory maximum for a CSC-3 conviction in 1999, as it is now, was 15 years. MCL 750.520d(2). The 12-year minimum sentence that the trial court imposed for defendant's CSC-3 conviction exceeds two-thirds of the statutory maximum of 15 years. In addition, in 1999, as it is now, the statutory maximum sentence for assault with intent to commit CSC involving penetration was 10 years, MCL 750.520g(1). The 7-year minimum sentence that the trial court imposed for this conviction exceeds two-thirds of the 10-year statutory maximum. Accordingly, we vacate the defendant's

---

when it grows dark, and when her husband is not around she puts her kids in the same room with her to keep an eye on them and turns on all of the security systems. The PSIR states that the victim has been involved in therapy for 17 years as a result of the offense, and that she is psychologically traumatized.

sentences and remand this case to the trial court for resentencing. On remand, the trial court shall resentence defendant to valid sentences for his third-degree CSC conviction and his conviction for assault with attempt to commit CSC involving penetration. See *People v Martinez*, 500 Mich 957; 891 NW2d 488 (Mem) (2017)

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Stephen L. Borrello
/s/ Jane M. Beckering