*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLICATED
June 12, 2025
11:14 AM

Plaintiff-Appellee,

v

No. 369003
St. Clair Circuit Court
LC No. 23-001042-FH

RANDOLPH JAMES BROWN, JR.,

Defendant-Appellant.

Before: K. F. KELLY, P.J., and O'BRIEN and ACKERMAN, JJ.

PER CURIAM.

Defendant appeals his jury conviction of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) and (2)(b), for engaging in sexual contact with a victim under the age of 13 while he was 17 years of age or older. He was sentenced as a second-offense habitual offender, MCL 769.10, to 5 to 22½ years' imprisonment. On appeal, defendant raises several claims of error, including ineffective assistance of counsel, prosecutorial error, improper scoring of the sentencing guidelines, inaccuracies in the presentence investigation report, and constitutional challenges to his sentence, including lifetime registration under the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq.*, and the requirement of lifetime electronic monitoring. We affirm.

## I. BACKGROUND

This case arises from defendant's sexual abuse of the victim when she was approximately six or seven years old. At the time, defendant was in a relationship with the victim's mother and had a relationship with the victim akin to that of a stepfather. On multiple occasions, while the victim's mother was at work, defendant summoned the victim to his bedroom to discuss "how babies were made and where they came from." During some of those encounters, defendant exposed his genitals to the victim. In one instance, defendant ejaculated into a bucket in front of the victim. On another occasion, defendant asked the victim to touch his genitals, and she touched his "private area" with her finger.

After disclosing the abuse to a teacher, the victim was forensically interviewed and made additional disclosures. Defendant was then interviewed by Detective Laura Phillips. During that

-1-

interview, defendant denied sexually assaulting the victim but acknowledged that his memory of the relevant period was impaired due to the recent death of his mother and his use of illicit substances at the time. He described the victim as generally truthful and stated that, if her allegations were accurate, the abuse likely occurred during a time when his memory was compromised.

Following the presentation of evidence, the jury convicted defendant as charged. The trial court sentenced defendant as described above. It also sentenced defendant to lifetime registration under the SORA and to lifetime electronic monitoring. Defendant now appeals.

## II. ANALYSIS

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first claims that he was denied the effective assistance of counsel when trial counsel failed to request a second adjournment of his trial date to allow defense expert Dr. Daniel Swerdlow-Freed additional time to review evidence.

"Whether a defendant has received ineffective assistance of counsel is a mixed question of fact and constitutional law." *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023). We review factual findings for clear error and constitutional questions de novo. *Id*. Because the trial court did not conduct an evidentiary hearing on this issue, our review is limited to errors apparent on the record. *People v Hughes*, 339 Mich App 99, 105; 981 NW2d 182 (2021).

Both the Michigan and United States Constitutions guarantee a criminal defendant the right to the assistance of counsel. Const 1963, art 1, § 20; US Const, Am VI. "This right guarantees the effective assistance of counsel." *Yeager*, 511 Mich at 488, citing *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To obtain a new trial based on ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Abcumby-Blair*, 335 Mich App 210, 228; 966 NW2d 437 (2020) (citation omitted).

A defendant establishes deficient performance by showing that "counsel made errors so serious that counsel was not performing as the 'counsel' guaranteed by the Sixth Amendment." *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015) (citation omitted). Counsel is presumed effective, and a defendant "must overcome the strong presumption that counsel's challenged actions were sound trial strategy." *Id*. "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Traver (On Remand)*, 328 Mich App 418, 422-423; 937 NW2d 398 (2019) (citation omitted).

Defendant's trial was initially scheduled for April 2023. Defense counsel retained Dr. Swerdlow-Freed to review the victim's forensic interview video and moved to adjourn the trial to October 2023 to allow additional time for review. The prosecution opposed delaying trial, emphasizing the victim's young age and noting that Dr. Swerdlow-Freed "sometimes takes quite

a long time to get [his] reports done." The trial court granted the adjournment until October 2023 but warned that it was "not going to necessarily simply work around [Dr. Swerdlow-Freed's] schedule." Trial counsel did not request a second adjournment, and Dr. Swerdlow-Freed did not testify at trial.

Defendant has not overcome the presumption that counsel's decision not to request another adjournment was sound trial strategy. He provides no offer of proof or explanation for why counsel chose not to seek additional time. Given the trial court's earlier comments, counsel may have reasonably concluded that a second adjournment would likely be denied and chose to proceed without risking further delay.

Nor has defendant demonstrated prejudice. "Without some indication that a witness would have testified favorably, a defendant cannot establish that counsel's failure to call the witness would have affected the outcome of his or her trial." *People v Carll*, 322 Mich App 690, 703; 915 NW2d 387 (2018). Defendant has not offered any evidence regarding the testimony that Dr. Swerdlow-Freed would have given if called at trial, and we will not speculate about the content of that testimony. See *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). Without an offer of proof demonstrating that the testimony would have been favorable to him, defendant cannot establish that trial counsel's decision against seeking a second adjournment prejudiced his defense.

## B. PROSECUTORIAL ERROR

Defendant next contends that the prosecutor erred[1] by impermissibly vouching for the credibility of the victim and Detective Phillips during closing argument.

We review unpreserved claims of prosecutorial error for plain error affecting substantial rights. *People v Isrow*, 339 Mich App 522, 529; 984 NW2d 528 (2021). To obtain relief under that standard, a defendant must show that "(1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights, i.e., prejudiced defendant by affecting the outcome of the proceedings." *People v Anderson*, 341 Mich App 272, 279; 989 NW2d 832 (2022) (quotation marks and citation omitted). Even if those requirements are met, reversal is warranted only if the error "resulted in the conviction of an actually innocent defendant" or "seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (cleaned up).

"[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). Claims of

---

[1] Defendant characterizes this claim as "prosecutorial misconduct." "Although the term 'prosecutorial misconduct' has become a term of art often used to describe any error committed by the prosecution, claims of inadvertent error by the prosecution are better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct.' " *People v Jackson (On Reconsideration)*, 313 Mich App 409, 425 n 4; 884 NW2d 297 (2015) (cleaned up).

prosecutorial error "are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *Id*. at 64. We evaluate a prosecutor's comments "in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *Id*.

"Generally, prosecutors are accorded great latitude regarding their arguments and conduct." *Cooper*, 309 Mich App at 90 (cleaned up). A prosecutor may argue the evidence and reasonable inferences from it but must avoid making improper or prejudicial remarks. *People v Bahoda*, 448 Mich 261, 282-283; 531 NW2d 659 (1995). It is improper for a prosecutor to vouch for a witness by suggesting personal knowledge of the witness's truthfulness or by implying special insight into credibility. *People v Meissner*, 294 Mich App 438, 456; 812 NW2d 37 (2011); *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). "But a prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *Thomas*, 260 Mich App at 455. Those types of arguments "are not improper when based on the evidence, even if couched in terms of belief or disbelief." *People v Unger*, 278 Mich App 210, 240; 749 NW2d 272 (2008).

Defendant submits that the prosecutor improperly vouched for the victim's and Detective Phillips' credibility during closing argument:

> [Defendant] sat on the stand and said I never, never would use drugs around the kids. I never said they made me think or act differently. I said are you sure? You sure, because that's what you told Detective Phillips, right? Nope, I never said that. But he did. And you know he did, because Detective Phillips told you. *And she doesn't have a special reason to lie, it's just her job.*

> I don't think it's brutally honest when you sit there and try to think of different excuses. *The excuses are just lies*. Things that you think might be plausible enough to explain away what happened. Is that brutally honest? I don't know. That's the decision you guys get to make . . . .

> \* \* \*

> You get to decide if you believe all, some, or none of what [the victim] told you. But if you don't believe [her], make no mistake, you are calling her a liar. There's been no other explanation or reason or misunderstanding offered to you. You do not believe [the victim], it is because *you believe she is a liar for no good reason*. And I don't know why.

Those statements do not constitute impermissible vouching. The prosecutor did not claim special insight into the victim's or detective's credibility. Instead, the prosecutor argued that the detective had no motive to lie and that there was no reason to doubt the victim's credibility. Those arguments responded to the defense theory that the victim fabricated the sexual abuse and were

permissible. See *People v Wisniewski*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 361978); slip op at 15-16. Accordingly, defendant has not shown plain error.[2]

## C. SCORING CHALLENGES

Defendant next challenges the scoring of Prior Record Variable (PRV) 5 (prior misdemeanor convictions or juvenile adjudications), Offense Variables (OV) 8 (victim asportation or captivity), and OV 10 (exploitation of a vulnerable victim). We conclude that defendant waived that claim of error.

"[W]aiver is the intentional relinquishment or abandonment of a known right." *Carines*, 460 Mich at 762 n 7 (quotation marks and citation omitted). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (citation omitted). "When defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011).

Here, during the sentencing hearing, the trial court asked if either party had objections to the sentencing guidelines scoring. Defense counsel responded, "No, your Honor." That affirmative representation waived any challenge to the scoring of the guidelines.

Defendant also contends that trial counsel was ineffective for failing to object to the scoring of PRV 5, OV 8, and OV 10. Because "[c]ounsel is not ineffective for declining to raise a futile objection," *People v Muniz*, 343 Mich App 437, 449; 997 NW2d 325 (2022), we must determine whether any of the challenged scores were erroneous and, if so, whether the error prejudiced defendant by affecting the outcome of the proceedings.

The trial court assessed 10 points for PRV 5, which is appropriate when "[t]he offender has 3 or 4 prior misdemeanor convictions or prior misdemeanor juvenile adjudications." MCL 777.55(1)(c). At sentencing, defendant had only two scoreable prior misdemeanor convictions: a 2016 conviction for domestic violence and a 2017 conviction for operating while visibly impaired. PRV 5 should therefore have been assessed at five points under MCL 777.55(1)(d), and the trial court erred in scoring 10 points. Nonetheless, defendant is not entitled to relief because correcting the error does not change the applicable guidelines range, and the error was therefore harmless. See *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006) ("When a scoring error does not alter the appropriate guidelines range, resentencing is not required."). Accordingly, defendant cannot show that counsel's failure to object to the PRV 5 score prejudiced him.

---

[2] Defendant also claims trial counsel was ineffective for failing to object to the prosecutor's remarks. But because the remarks were not improper, any objection would have been futile. "Counsel is not ineffective for declining to raise a futile objection." *People v Muniz*, 343 Mich App 437, 449; 997 NW2d 325 (2022).

The trial court also assessed 15 points for OV 8, which applies if the "victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense." MCL 777.38(1). "A victim is asported to a place or situation involving greater danger when moved away from the presence or observation of others." *People v Chelmicki*, 305 Mich App 58, 70-71; 850 NW2d 612 (2014). "Asportation does not require force; asportation for purposes of OV 8 may occur even when the victim voluntarily accompanied the defendant to a place or situation of greater danger." *People v Dillard*, 303 Mich App 372, 379; 845 NW2d 518 (2013), abrogated on other grounds by *People v Barrera*, 500 Mich 14, 17; 892 NW2d 789 (2017).

Here, trial evidence established that defendant called the victim into his bedroom before committing the assault, removing her from an area where others might observe them to a more secluded and dangerous setting. That conduct supports the 15-point score for OV 8. See *Barrera*, 500 Mich at 21-22 (holding that the trial court properly assessed 15 points for OV 8 when the defendant "took the victim from the living room into his bedroom in order to sexually assault her"). Because the trial court did not err, counsel's failure to object to the assessment of OV 8 was not deficient performance. See *Muniz*, 343 Mich App at 449.

The trial court assessed 15 points for OV 10, which is appropriate when "[p]redatory conduct was involved." MCL 777.40(1)(a). "Predatory conduct is defined in the statute as preoffense conduct directed at a victim for the primary purpose of victimization." *People v Kosik*, 303 Mich App 146, 159; 841 NW2d 906 (2013) (quotation marks and citation omitted). To determine whether conduct is predatory, courts consider:

(1) Did the offender engage in conduct before the commission of the offense?

(2) Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation?

(3) Was victimization the offender's primary purpose for engaging in the preoffense conduct?

If the court can answer all these questions affirmatively, then it may properly assess 15 points for OV 10 because the offender engaged in predatory conduct under MCL 777.40. [*People v Cannon*, 481 Mich 152, 162; 749 NW2d 257 (2008).]

The trial court did not err in assessing 15 points for OV 10. The evidence establishes that, before he told the victim to touch his genitals, defendant on several occasions called her into his bedroom and told her how babies were made. He talked to her about his "private area" and told her that he would put it into a "woman's private area." He also exposed his genitals to the victim during these conversations. That conduct supports a finding that defendant engaged in calculated, preoffense behavior aimed at exploiting the child's vulnerability to facilitate sexual victimization. Accordingly, no error occurred relative to OV 10, and counsel's failure to object to the assessment of that variable does not constitute deficient performance. See *Muniz*, 343 Mich App at 449.

Because the error in scoring PRV 5 was harmless and the scores for OV 8 and OV 10 were proper, defendant has not established that trial counsel rendered ineffective assistance by failing to object.

## D. PRESENTENCE INVESTIGATION REPORT

Defendant also challenges the accuracy of the presentence investigation report (PSIR). However, defense counsel waived this claim by affirmatively stating at sentencing that there were no objections to the accuracy of the PSIR. See *Kowalski*, 489 Mich at 503. Defendant is therefore not entitled to relief based on any alleged inaccuracy in the PSIR.

## E. SORA

Defendant next asserts that his sentence to lifetime registration under the 2021 SORA constitutes cruel and unusual punishment.

We review constitutional questions de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "Statutes are presumed to be constitutional, and the courts have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011) (citation omitted). "A party challenging the constitutionality of a statute has the burden of proving its invalidity." *People v Jarrell*, 344 Mich App 464, 482; 1 NW3d 359 (2022). Because defendant did not preserve this claim, our review is limited to plain error affecting his substantial rights. *People v Burkett*, 337 Mich App 631, 635; 976 NW2d 864 (2021); *Carines*, 460 Mich at 763.

"The Michigan Constitution prohibits cruel or unusual punishment, Const 1963, art 1, § 16, whereas the United States Constitution prohibits cruel and unusual punishment, US Const, Am VIII. If a punishment passes muster under the state constitution, then it necessarily passes muster under the federal constitution." *Burkett*, 337 Mich App at 636 (citations omitted).

Challenges to the constitutionality of a statute fall into two categories: facial challenges and as-applied challenges. *Jarrell*, 344 Mich App at 482. "A facial challenge involves a claim that there is no set of circumstances under which the enactment is constitutionally valid, while an as-applied challenge considers the specific application of a facially valid law to individual facts." *Id*. (quotation marks and citation omitted). Defendant raises both.

First, we must determine whether lifetime registration under the 2021 SORA constitutes a "punishment" in the context of a CSC-II conviction under MCL 750.520c(1)(a). See *People v Lymon*, __ Mich ___; ___ NW3d ___ (2024) (Docket No. 164685); slip op at 9-10. In *Lymon*, our Supreme Court held that "the Legislature intended the 2021 SORA as a civil regulation." *Id*. at ___; slip op at 13. Because "the Legislature intended the statute as a civil remedy, this Court must [next] consider whether the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil." *Id*. at ___; slip op at 10 (quotation marks and citation omitted).

To assess whether a statute is punitive in effect, Michigan courts consider five factors derived from *Kennedy v Mendoza-Martinez*, 372 US 144; 83 S Ct 554; 9 L Ed 2d 644 (1963):[3]

> (1) whether the statute has historically been regarded as punishment; (2) whether the statute imposes an affirmative disability or restraint; (3) whether the statute promotes the traditional aims of punishment; (4) whether the statute has a rational connection to a nonpunitive purpose; and (5) whether the statute is excessive with respect to its nonpunitive purpose. [*Lymon*, ___ Mich at ___; slip op at 11.]

In *Lymon*, the Michigan Supreme Court concluded that "the 2021 SORA constitutes punishment as applied to non-sexual offenders," *Lymon*, ___ Mich at ___; slip op at 30 (footnote omitted), but expressly declined to address whether it constitutes punishment as to sexual offenders:

> Our opinion does not reach the question whether the 2021 SORA constitutes punishment as to sexual offenders . . . . To the extent that portions of our *Mendoza-Martinez* analysis might be relevant to a later appeal that considers whether the 2021 SORA constitutes punishment as to sexual offenders, that relevance does not define the outcome of such a future challenge. The *Mendoza-Martinez* analysis is cumulative, and while some of our analysis here will be relevant to other circumstances, some will not. Perhaps the effects of the 2021 SORA as applied to sexual offenders are so punitive as to outweigh the Legislature's civil intent, and perhaps not. [*Id*. at n 20.]

Subsequently, in *People v Kiczenski*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364957); slip op at 13, this Court held that "the 2021 SORA does not constitute punishment as applied to CSC-I offenders." Although *Kiczenski* involved an ex post facto

---

[3] Our Supreme Court recognized that the United States Supreme Court identified seven factors in *Mendoza-Martinez*:

> [1] Whether the sanction involves an affirmative disability or restraint, [2] whether it has historically been regarded as a punishment, [3] whether it comes into play only on a finding of scienter, [4] whether its operation will promote the traditional aims of punishment—retribution and deterrence, [5] whether the behavior to which it applies is already a crime, [6] whether an alternative purpose to which it may rationally be connected is assignable for it, and [7] whether it appears excessive in relation to the alternative purpose assigned. [*People v Earl*, 495 Mich 33, 44; 845 NW2d 721 (2014), citing *Mendoza-Martinez*, 372 US at 168-169.]

The United States Supreme Court "acknowledged that the *Mendoza-Martinez* factors were neither exhaustive nor individually dispositive." *People v Betts*, 507 Mich 527, 545; 968 NW2d 497 (2021), citing *Smith v Doe*, 538 US 84, 97; 123 S Ct 1140; 155 L Ed 2d 164 (2003). As our Supreme Court has explained, "[i]n the context of the constitutionality of sex-offender-registry statutes, the United States Supreme Court and this Court have identified . . . five of these seven factors as having particular relevance." *Lymon*, ___ Mich at ___; slip op at 11.

challenge rather than a cruel-or-unusual-punishment challenge, the Court emphasized that both inquiries require analysis under the *Mendoza-Martinez* framework. *Id*. at ___; slip op at 7 n 4.

In *Kiczenski*, this Court found that while the first three *Mendoza-Martinez* factors weighed somewhat in favor of punishment, the fourth and fifth factors weighed strongly against finding a punitive effect. *Id*. at ___; slip op at 7-8. In particular, the Court stressed that in the context of sexual offenses, the 2021 SORA serves a legitimate, nonpunitive purpose: alerting the public to the location of individuals who may pose a risk of recidivism. *Id*. at ___; slip op at 9. It also concluded that the statute was not excessive relative to that purpose when applied to those convicted of sex offenses:

> Sexual offenders are still branded dangerous sex offenders, and face the demanding requirements and consequences of the 2021 SORA. However, while denoting a non-sex offender as a sex offender is not accurate and contributes to it being excessive, the opposite is true for the individual who, like defendant, *has* committed a sex offense. These less restrictive provisions under the 2021 SORA are a great deal less excessive when applied to sex offenders because they are precisely the offenders the Legislature established these regulations for in order to protect against future harm to victims, particularly the young and vulnerable. [*Id*. at ___; slip op at 11 (quotation marks and citations omitted).]

The Court concluded that the defendant failed to prove that "the 2021 SORA is so punitive either in purpose or effect as to negate the State's intention to deem it civil" in the context of CSC-I convictions. *Id*. at ___; slip op at 12 (quotation marks and citation omitted).

Defendant now asks this Court to reach the opposite conclusion in the context of his CSC-II conviction under MCL 750.520c(1)(a). We decline to do so. The primary distinction between CSC-I contrary to MCL 750.520b and CSC-II contrary to MCL 750.520c is that the former requires sexual penetration while the latter requires sexual contact. See MCL 750.520b(1); MCL 750.520c(1). Nothing in *Kiczenski* suggests that its conclusion turned on that distinction. Rather, the decision emphasized the 2021 SORA's connection to a nonpunitive purpose: "identifying potentially recidivist sex offenders and alerting the public" in the interest of public safety. *Kiczenski*, ___ Mich App at ___; slip op at 9. It also noted the SORA's "restrictions are not excessive when applied to the public safety concerns the statute addresses with respect to sex offenders." *Id*. at ___; slip op at 11.

That rationale applies equally to defendant's CSC-II conviction under MCL 750.520c(1)(a), which—like CSC-I—involves a sexual offense committed against a "young and vulnerable" victim. *Kiczenski*, ___ Mich App at ___; slip op at 11. Accordingly, for the same reasons articulated in *Kiczenski*, we conclude that lifetime registration under the 2021 SORA does not constitute punishment in this context. Defendant has therefore failed to show that lifetime registration under the 2021 SORA constitutes cruel or unusual punishment.

### F.  LIFETIME ELECTRONIC MONITORING

Defendant raises two challenges to the requirement that he submit to lifetime electronic monitoring: first, that it constitutes cruel or unusual punishment; and second, that it violates the constitutional prohibition on unreasonable searches.

We review constitutional questions de novo.  *LeBlanc*, 465 Mich at 579.  Because defendant did not raise these arguments in the trial court, our review is limited to plain error affecting substantial rights.  *Burkett*, 337 Mich App at 635; *Carines*, 460 Mich at 763.

### 1.  CRUEL OR UNUSUAL PUNISHMENT

As discussed above, "[t]he Michigan Constitution prohibits cruel or unusual punishment, Const 1963, art 1, § 16, whereas the United States Constitution prohibits cruel and unusual punishment, US Const, Am VIII.  If a punishment passes muster under the state constitution, then it necessarily passes muster under the federal constitution."  *Burkett*, 337 Mich App at 636 (citations omitted).  Defendant raises an as-applied challenge to the lifetime electronic monitoring requirement.

"For someone convicted of CSC-II where the victim is under the age of 13 and the perpetrator is over the age of 17, lifetime electronic monitoring, which will track defendant's movement and location until his death, is required by statute."  *People v Hallak*, 310 Mich App 555, 566-567; 873 NW2d 811 (2015), rev'd in part on other grounds 499 Mich 879 (2016); see also MCL 750.520n(1).  Because "lifetime electronic monitoring is a punishment," *Hallak*, 310 Mich App at 571, we must determine whether that punishment is "cruel or unusual."

"The focus of this inquiry is whether a punishment is grossly disproportionate."  *Lymon*, ___ Mich at ___; slip op at 31 (quotation marks and citation omitted).  Courts evaluate gross disproportionality by considering the following four factors:

> (1) the harshness of the penalty compared to the gravity of the offense; (2) the penalty imposed for the offense compared to the penalties for other offenses in Michigan; (3) the penalty imposed for the offense in Michigan as compared to the penalty imposed for the same offense in other states; and (4) whether the penalty imposed advances the goal of rehabilitation.  [*Id*.]

In *Hallak*, we considered whether lifetime electronic monitoring was cruel or unusual punishment in the context of a CSC-II conviction involving sexual contact with a minor under 13 years old.  310 Mich App at 571-577.  In concluding that lifetime electronic monitoring was not cruel or unusual punishment as applied to the defendant, we emphasized there was an "ancillary societal benefit of this lifelong monitoring: to ensure that certain sex offenders will not again be in a position to exploit their potential victims—children, some of the most vulnerable in our society."  *Id*. at 575.  And "lifetime electronic monitoring would help to protect potential victims from defendant, who in turn would likely be deterred from engaging in such acts if he were closely monitored."  *Id*. at 577.  The Court also observed that "[m]any states have imposed the penalty of lifetime electronic monitoring for various CSC cases."  *Id*.  Accordingly, the Court held that "when employing an as-applied standard under the state Constitution, lifetime electronic monitoring is not cruel or unusual punishment."  *Id*. (footnote omitted).

Defendant urges this Court to depart from *Hallak* and hold that lifetime monitoring constitutes cruel or unusual punishment in this case. We decline to do so. As applied to defendant's CSC-II conviction involving sexual contact with a six- or seven-year-old child with whom he had a stepparent-like relationship, the requirement is not grossly disproportionate. The seriousness of the offense weighs heavily against the claim of disproportionality. Additionally, Michigan and other states "have mandated lifetime monitoring for defendants convicted of the most serious CSC offenses or CSC with a minor." *Id*. at 575. Finally, as *Hallak* observed, "lifetime electronic monitoring for those convicted of CSC-II against a victim less than 13 years old addresses the significant concerns of rehabilitation and recidivism." *Id*. at 573. In light of those considerations, the imposition of lifetime electronic monitoring in this case is not cruel or unusual punishment.

## 2. UNREASONABLE SEARCH

"Both the United States Constitution and the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Pagano*, 507 Mich 26, 31-32; 967 NW2d 590 (2021); see also US Const, Am IV; Const 1963, art 1, § 11. "[A]n electronic monitoring device to monitor defendant's movement constitutes a search for purposes of the Fourth Amendment." *Hallak*, 310 Mich App at 579. But "that conclusion does not end the Fourth Amendment inquiry, as the Fourth Amendment only precludes *unreasonable* searches." *Id*.

To determine whether a search is reasonable, we consider "all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *Id*. (citation omitted). "The applicable test in determining the reasonableness of an intrusion is to balance the need to search, in the public interest, for evidence of criminal activity against invasion of the individual's privacy." *Id*. (citation omitted).

In *Hallak*, this Court held that "lifetime electronic monitoring for a defendant 17 years or older convicted of CSC-II involving a minor under 13 is not unreasonable." *Id*. The Court reasoned that "when enacting this monitoring system and requiring it only for those 17 or older who commit CSC against children under the age of 13, the Legislature was addressing punishment, deterrence, and the protection of some of the most vulnerable in our society against some of the worst crimes known." *Id*. at 580. The Court further explained that lifetime monitoring "assists law enforcement efforts to ensure that these individuals, who have committed the most egregious and despicable of society and criminal offenses, do not frequent prohibited areas (elementary schools, etc.) and remain compliant with the [SORA]." *Id*. (quotation marks and citation omitted). The Court acknowledged that "such monitoring of a law-abiding citizen would be unreasonable" but concluded that, in this context, "the strong public interest in the benefit of monitoring those convicted of CSC-II against a child under the age of 13 outweighs any minimal impact on defendant's reduced privacy interest." *Id*. at 581.

This Court's decision in *Hallak* remains binding precedent. See MCR 7.215(C)(2). Accordingly, we decline defendant's invitation to revisit or depart from its reasoning. As set forth in *Hallak*, the requirement that defendant submit to lifetime electronic monitoring is not an unreasonable search under the Michigan or United States Constitution.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Colleen A. O'Brien
/s/ Matthew S. Ackerman